## SCOTT *v.* McNEAL.

ERROR TO THE SUPREME COURT OF THE STATE OF WASHINGTON.

No. 890. Submitted October 23, 1893. — Decided May 14, 1894.

A court of probate, in the exercise of its jurisdiction over the probate of wills and the administration of estates of deceased persons, has no jurisdiction to appoint an administrator of the estate of a living person; and its orders, made after public notice, appointing an administrator of the estate of a person who is in fact alive, although he has been absent and not heard from for seven years, and licensing the administrator to sell his land for payment of his debts, are void; and the purchaser at the sale takes no title, as against him.

A judgment of the highest court of a State, by which the purchaser, at an administrator's sale under order of a probate court, of land of a living person, who had no notice of its proceedings, is held to be entitled to the land as against him, deprives him of his property without due process of law, contrary to the Fourteenth Amendment of the Constitution of the United States, and is reviewable by this court on writ of error.

THIS was an action of ejectment brought January 14, 1892, in the Superior Court of Thurston County in the State of Washington, by Moses H. Scott against John McNeal and Augustine McNeal to recover possession of a tract of land in that county.

At the trial, it was conceded that the title in this land was in the plaintiff until 1888; and he testified that he entered into possession thereof, and made improvements thereon, and had never parted with the possession, nor authorized any one to go upon the land; that he had demanded possession of the defendants, and they had withheld it from him; and that its rental value was $100 a year.

The defendants denied the plaintiff's title, and claimed title in themselves under a deed from an administrator of the plaintiff's estate, appointed in April, 1888; and in their answer alleged that in March, 1881, the plaintiff mysteriously disappeared from his place of abode, and without the knowledge of those with whom he had been accustomed to associate, and remained continuously away until July, 1891, and was generally believed by his former associates to be dead; and specifically alleged, and at the trial offered evidence tending to prove, the following facts:

On April 2, 1888, Mary Scott presented to the probate court of the county of Thurston, in the Territory of Washington, a petition for the appointment of R. H. Milroy as administrator of the estate of the plaintiff, alleging "that one Moses H. Scott, heretofore a resident of the above named county and Territory, mysteriously disappeared some time during the month of March, 1881, and more than seven years ago; that careful inquiry made by relatives and friends of said Moses H. Scott, at different times since his said disappearance, has failed to give any trace or information of his whereabouts, or any evidence that he is still living; that your petitioner verily believes that said Moses H. Scott is dead, and has been dead from the time of his said disappearance;" that he was never married, and left no last will or testament yet heard of; that he left real estate in his own right in this county, of the value of $600, more or less; that his heirs were three minor children of a deceased brother; and that the petitioner was a judgment creditor of Scott.

Notice of that petition was given by posting in three public places, as required by law, a notice, dated April 7, 1888, signed by the probate judge, and in these words: "In the Probate

Court of Thurston County, W. T. — Mary Scott having filed in this court a petition praying for the appointment of R. H. Milroy as administrator of the estate of Moses H. Scott, notice is hereby given that the hearing and consideration of said petition has been fixed for Friday, April 20, 1888, at 10 o'clock A.M., at the office of the undersigned."

At the time thus appointed, the probate court, after appointing a guardian *ad litem* for said minors, and hearing witnesses, made an order by which, "it duly appearing that said Moses H. Scott disappeared over seven years ago, and that since said time nothing has been heard or known of him by his relatives and acquaintances, and that said relatives and acquaintances believe him to be dead, and that his surroundings, when last seen (about eight years ago), and the circumstances of that time and immediately and shortly afterwards, were such as to give his relatives and acquaintances the belief that he was murdered at about that time; and it appearing that he has estate in this county : Now, therefore, the court find that the said Moses H. Scott is dead to all legal intents and purposes, having died on or about March 25, 1888; and no objections having been filed or made to the said petition of Mary Scott, and the guardian *ad litem* of the minor heirs herein consenting, it is ordered that said R. H. Milroy be appointed administrator of said estate, and that letters of guardianship issue to him upon his filing a good and sufficient bond in the sum of one thousand dollars." Letters of administration were issued to Milroy, and he gave bond accordingly.

On July 16, 1888, the probate court, on the petition of Milroy as administrator, and after the usual notice, and with the consent of the guardian *ad litem* of said minors, made an order, authorizing Milroy as administrator to sell all Scott's real estate. Pursuant to this order, he sold by public auction the land now in question, for the price of $301.50, to Samuel C. Ward. On November 26, 1888, the probate court confirmed the sale, the land was conveyed to Ward, and the purchase money was received by Milroy, and was afterwards applied by him to the payment of a debt of Scott, secured by mortgage of the land.

On November 26, 1889, Ward conveyed this land by warranty deed to the defendants, for a consideration paid of $800; and the defendants forthwith took and since retained possession of the land, and made valuable improvements thereon.

At the time of the offer of this evidence, the plaintiff objected to the admission of the proceedings in the probate court, upon the ground that they were absolutely void, because no administration on the estate of a live man could be valid, and the probate court had no jurisdiction to make the orders in question; and objected to the rest of the evidence as irrelevant and immaterial. But the court ruled that, the probate court having passed upon the sufficiency of the petition to give it jurisdiction, and having found that the law presumed Scott to be dead, its proceedings were not absolutely void; and therefore admitted the evidence objected to, and directed a verdict for the defendants, which was returned by the jury and judgment rendered thereon. The plaintiff duly excepted to the rulings and instructions at the trial, and appealed to the Supreme Court of the State.

In that court, it was argued in his behalf "that to give effect to the probate proceedings under the circumstances would be to deprive him of his property without due process of law." But the court held the proceedings of the probate court to be valid, and therefore affirmed the judgment. 5 Wash. St. 309.

The plaintiff sued out this writ of error; and assigned for error that the probate proceedings, as regarded him and his estate, were without jurisdiction over the subject-matter, and absolutely void; and that the judgment of the superior court, and the judgment of the Supreme Court of the State affirming that judgment, deprived him of his property without due process of law, and were contrary to the Fourteenth Amendment of the Constitution of the United States.

*Mr. Nathan S. Porter* for plaintiff in error.

*Mr. Milo A. Root* for defendants in error.

I. In order to give this court jurisdiction, it must appear

from the record that a Federal question was involved. This court will not entertain jurisdiction if it appears that, besides the Federal question decided by the state court, there is another and distinct ground on which the judgment or decree can be sustained, and which is sufficient to support it.

The Supreme Court of Washington finds that defendants in error stand in the position of innocent purchasers; that the equities are with them; that "appellant wilfully abandoned the property in question, and he had reason to expect that proceedings of the kind would be instituted after a lapse of seven years."

These findings, if correct, are sufficient to sustain the judgment and present no Federal question. Their determination by the state court is therefore conclusive, and is sufficient to sustain the judgment.

If a statute regulating probate proceedings is itself constitutional, the decision of the state court of last resort that the provisions of such statute have been complied with in a given cause, is conclusive. In the case at bar, the constitutionality of the statutes, under which the probate proceedings were had, is not and has not been questioned.

II. Where a probate court, upon a petition setting forth jurisdictional facts, finds those facts (including the fact of death) to exist, the proceedings will protect all persons depending thereon in good faith, even though the supposed decedent subsequently prove to be alive. *Roderigas* v. *East River Savings Institution*, 63 N. Y. 460; *Plume* v. *Howard Savings Institution*, 17 Vroom, 46 N. J. L. 211, 229.

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

The plaintiff formerly owned the land in question, and still owns it, unless he has been deprived of it by a sale and conveyance, under order of the probate court of the county of Thurston and Territory of Washington, by an administrator of his estate, appointed by that court on April 20, upon a petition filed April 2, 1888.

The form of the order appointing the administrator is peculiar. By that order, after reciting that the plaintiff disappeared more than seven years before, and had not since been seen or heard of by his relatives and acquaintances, and that the circumstances at and immediately after the time when he was last seen, about eight years ago, were such as to give them the belief that he was murdered about that time, the probate court finds that he " is dead to all legal intents and purposes, having died on or about March 25, 1888," that is to say, not at the time of his supposed murder seven or eight years before, but within a month before the filing of the petition for administration. The order also, after directing that Milroy be appointed administrator, purports to direct that "letters of guardianship" issue to him upon his giving bond; but this was evidently a clerical error in the order, or in the record, for it appears that he received letters of administration and qualified under them.

The fundamental question in the case is whether letters of administration upon the estate of a person who is in fact alive have any validity or effect as against him.

By the law of England and America, before the Declaration of Independence, and for almost a century afterwards, the absolute nullity of such letters was treated as beyond dispute.

In *Allen* v. *Dundas*, 3 T. R. 125, in 1789, in which the Court of King's Bench held that payment of a debt due to a deceased person, to an executor who had obtained probate of a forged will, discharged the debtor, notwithstanding the probate was afterwards declared null and void and administration granted to the next of kin, the decision went upon the ground that the probate, being a judicial act of the ecclesiastical court within its jurisdiction, could not, so long as it remained unrepealed, be impeached in the temporal courts. It was argued for the plaintiff that the case stood as if the creditor had not been dead, and had himself brought the action, in which case it was assumed, on all hands, that payment to an executor would be no defence. But the court clearly stated the essential distinction between the two cases. Mr. Justice Ashurst said: "The case of a probate of a supposed will *during the*

life of the party may be distinguished from the present; because during his life the ecclesiastical court has no jurisdiction, nor can they inquire who is his representative; but when the party is dead, it is within their jurisdiction." And Mr. Justice Buller said: "Then this case was compared to a probate of a supposed will of a living person; but in such a case the ecclesiastical court have no jurisdiction, and the probate can have no effect: their jurisdiction is only to grant probates of the wills of dead persons. The distinction in this respect is this; if they have jurisdiction, their sentence, as long as it stands unrepealed, shall avail in all other places; but where they have no jurisdiction, their whole proceedings are a nullity." 3 T. R. 129, 130. And such is the law of England to this day. Williams on Executors, (9th ed.) 478, 1795; Taylor on Ev. (8th ed.) §§ 1677, 1714.

In *Griffith* v. *Frazier*, 8 Cranch, 9, 23, in 1814, this court, speaking by Chief Justice Marshall, said: " To give the ordinary jurisdiction, a case in which, by law, letters of administration may issue, must be brought before him. In the common case of intestacy, it is clear that letters of administration must be granted to some person by the ordinary ; and though they should be granted to one not entitled by law, still the act is binding until annulled by the competent authority; because he had power to grant letters of administration in the case. But suppose administration to be granted on an estate of a person not really dead. The act, all will admit, is totally void. Yet the ordinary must always inquire and decide whether the person, whose estate is to be committed to the care of others, be dead or in life. It is a branch of every cause in which letters of administration issue. Yet the decision of the ordinary that the person on whose estate he acts is dead, if the fact be otherwise, does not invest the person he may appoint with the character or powers of an administrator. The case, in truth, was not one within his jurisdiction. It was not one in which he had a right to deliberate. It was not committed to him by the law. And although one of the points occurs in all cases proper for his tribunal, yet that point cannot bring the subject within his jurisdiction." See also *Mutual Benefit*

*Ins. Co.* v. *Tisdale*, 91 U. S. 238, 243; *Hegler* v. *Faulkner*, 153 U. S. 109, 118.

The same doctrine has been affirmed by the Supreme Court of Pennsylvania in a series of cases beginning seventy years ago. *McPherson* v. *Cunliff*, (1824) 11 S. & R. 422, 430; *Peebles' Appeal*, (1826) 15 S. & R. 39, 42; *Devlin* v. *Commonwealth*, (1882) 101 Penn. St. 273. In the last of those cases, it was held that a grant of letters of administration upon the estate of a person who, having been absent and unheard from for fifteen years, was presumed to be dead, but who, as it afterwards appeared, was in fact alive, was absolutely void, and might be impeached collaterally.

The Supreme Judicial Court of Massachusetts, in 1861, upon full consideration, held that an appointment of an administrator of a man who was in fact alive, but had been absent and not heard from for more than seven years, was void, and that payment to such an administrator was no bar to an action brought by the man on his return; and, in answer to the suggestion of counsel, that "seven years' absence, upon leaving one's usual home or place of business, without being heard of, authorizes the judge of probate to treat the case as though the party were dead," the court said: "The error consists in this, that those facts are only presumptive evidence of death, and may always be controlled by other evidence showing that the fact was otherwise. The only jurisdiction is over the estate of the dead man. When the presumption arising from the absence of seven years is overthrown by the actual personal presence of the supposed dead man, it leaves no ground for sustaining the jurisdiction." *Jochumsen* v. *Suffolk Savings Bank*, 3 Allen, 87, 96. See also *Waters* v. *Stickney*, 12 Allen, 1, 13; *Day* v. *Floyd*, 130 Mass. 488, 489.

The Civil Code of Louisiana, in title 3, "Of Absentees," contains provisions for the appointment of a curator to take care of the property of any person who is absent from or resides out of the State, without having left an attorney therein; and for the putting of his presumptive heirs into provisional possession after he has been absent and not heard from for five, or, if he has left an attorney, seven years, or sooner if

there be strong presumption of his death; and for judicial sale, if necessary, of his movable or personal property, and safe investment of the proceeds; and, upon proof that he has not been heard from for ten years, and has left no known heirs, for sale of his whole property, and payment of the proceeds into the treasury of the State, as in the case of vacant successions; but neither the curator, nor those in provisional possession, can alienate or mortgage his immovables or real estate; and if he returns, at any time, he recovers his whole property, or the proceeds thereof, and a certain proportion of the annual revenues, depending upon the length of his absence. The main object of those provisions, as their careful regulations show, is to take possession of and preserve the property for the absent owner, not to deprive him of it upon an assumption that he is dead. Accordingly, the Supreme Court of Louisiana held that the appointment, by a court having jurisdiction of successions, of an administrator of the estate of a man represented to be dead, but who was in fact alive at the time of the appointment, was void; and that persons claiming land of his, under a sale by such administrator under order of the court, followed by long possession, could not hold the land against his heirs; and, speaking by Chief Justice Manning, said: " The title of Hotchkiss as administrator is null, because he had no authority to make it, and the prescription pleaded does not validate it. It was not a sale, the informalities of which are cured by a certain lapse of time, and which becomes perfect through prescription; but it was void, because the court was without authority to order it." "It is urged, on the part of the defendants, that the decree of the court ordering the sale of the succession property should protect them, and, as the court which thus ordered the sale had jurisdiction of successions, it was not for them to look beyond it. But that is assuming as true that which we know was not true. The owner was not dead. There was no succession." And the court added that Chief Justice Marshall, in *Griffith* v. *Frazier*, above cited, disposed of that position. *Burns* v. *Van Loan*, (1877) 29 La. Ann. 560, 563.

The absolute nullity of administration granted upon the estate of a living person has been directly adjudged or distinctly recognized in the courts of many other States. *French* v. *Frazier*, (1832) 7 J. J. Marsh. 425, 427; *State* v. *White*, (1846) 7 Iredell, 116; *Duncan* v. *Stewart*, (1854) 25 Alabama, 408; *Andrews* v. *Avory*, (1858) 14 Grattan, 229, 236; *Moore* v. *Smith*, (1858) 11 Richardson, 569; *Morgan* v. *Dodge*, (1862) 44 N. H. 255, 259; *Withers* v. *Patterson*, (1864) 27 Texas, 491, 497; *Johnson* v. *Beazley*, (1877) 65 Missouri, 250, 264; *Melia* v. *Simmons*, (1878) 45 Wisconsin, 334; *D'Arusement* v. *Jones*, (1880) 4 Lea, (Tenn.) 251; *Stevenson* v. *Superior Court*, (1882) 62 California, 60; *Perry* v. *St. Joseph & Western Railroad*, (1882) 29 Kansas, 420, 423; *Thomas* v. *People*, (1883) 107 Illinois, 517, in which the subject is fully and ably treated.

The only judicial opinions, cited at the bar, (except the judgment below in the present case,) which tend to support the validity of letters of administration upon the estate of a living person, were delivered in the courts of New York and New Jersey within the last twenty years.

In *Roderigas* v. *East River Savings Institution*, 63 N. Y. 460, in 1875, a bare majority of the Court of Appeals of New York decided that payment of a deposit in a savings institution to an administrator under letters of administration issued in the life time of the depositor was a good defence to an action by an administrator appointed after his death, upon the ground that the statutes of the State of New York made it the duty of the surrogate, when applied to for administration on the estate of any person, to try and determine the question whether he was alive or dead, and therefore his determination of that question was conclusive. That decision was much criticised as soon as it appeared, notably by Chief Justice Redfield in 15 Amer. Law. Reg. (N. S.) 212. And in a subsequent case between the same parties in 1879, the same court unanimously reached a different conclusion, because evidence was produced that the surrogate never in fact considered the question of death, or had any evidence thereof — thus making the validity of the letters of administration to depend

not upon the question whether the man was dead, but upon the question whether the surrogate thought so. *Roderigas* v. *East River Savings Institution,* 76 N. Y. 316.

In *Plume* v. *Howard Savings Institution,* 17 Vroom, (46 N. J. Law,) 211, 230, in 1884, which was likewise an action to recover the amount of a deposit in a savings institution, the plaintiff had been appointed by the surrogate administrator of a man who, as the evidence tended to show, had neither drawn out any part of the deposit, nor been heard from, for more than twenty years; an inferior court certified to the Supreme Court of New Jersey the questions whether payment of the amount to the plaintiff would bar a recovery thereof by the depositor, and whether the plaintiff was entitled to recover; and that court, in giving judgment for the plaintiff, observed, by way of distinguishing the case from the authorities cited for the defendant, that "in most, if not all, of such cases, it was affirmatively shown that the alleged decedent was actually alive at the time of the issuance of letters of administration, while in the present case there is no reason for even surmising such to have been the fact."

The grounds of the judgment of the Supreme Court of the State of Washington in the case at bar, as stated in its opinion, were that the equities of the case appeared to be with the defendants; that the court was "inclined to follow" the case of *Roderigas* v. *East River Savings Institution,* 63 N. Y. 460; and that, under the laws of the Territory, the probate court, on an application for letters of administration, had authority to find the fact as to the death of the intestate, the court saying: "Our statutes only authorize administration of the estate of deceased persons, and before granting letters of administration the court must be satisfied by proof of the death of the intestate. The proceeding is substantially *in rem*, and all parties must be held to have received notice of the institution and pendency of such proceedings, where notice is given as required by law. Section 1299 of the 1881 Code gave the probate court exclusive original jurisdiction in such matters, and authorized such court to summon parties and witnesses, and examine them touching any matter in controversy before

said court or in the exercise of its jurisdiction." Such were the grounds upon which it was held that the plaintiff had not been deprived of his property without due process of law. 5 Wash. St. 309, 317, 318.

After giving to the opinion of the Supreme Court of the State the respectful consideration to which it is entitled, we are unable to concur in its conclusion, or in the reasons on which it is founded.

The Fourteenth Article of Amendment of the Constitution of the United States, after other provisions which do not touch this case, ordains, "nor shall any State deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." These prohibitions extend to all acts of the State, whether through its legislative, its executive, or its judicial authorities. *Virginia* v. *Rives*, 100 U. S. 313, 318, 319; *Ex parte Virginia*, 100 U. S. 339, 346; *Neal* v. *Delaware*, 103 U. S. 370, 397. And the first one, as said by Chief Justice Waite in *United States* v. *Cruikshank*, 92 U. S. 542, 554, repeating the words of Mr. Justice Johnson in *Bank of Columbia* v. *Okely*, 4 Wheat. 235, 244, was intended "to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice."

Upon a writ of error to review the judgment of the highest court of a State upon the ground that the judgment was against a right claimed under the Constitution of the United States, this court is no more bound by that court's construction of a statute of the Territory, or of the State, when the question is whether the statute provided for the notice required to constitute due process of law, than when the question is whether the statute created a contract which has been impaired by a subsequent law of the State, or whether the original liability created by the statute was such that a judgment upon it has not been given due faith and credit in the courts of another State. In every such case, this court must decide for itself the true construction of the statute. *Huntington* v. *Attrill*, 146 U. S. 657, 683, 684; *Mobile & Ohio Railroad* v. *Tennessee*, 153 U. S. 486, 492–495.

No judgment of a court is due process of law, if rendered
without jurisdiction in the court, or without notice to the
party.

The words " due process of law," when applied to judicial
proceedings, as was said by Mr. Justice Field, speaking for
this court, " mean a course of legal proceedings according to
those rules and principles which have been established in our
systems of jurisprudence for the protection and enforcement
of private rights.  To give such proceedings any validity,
there must be a tribunal competent by its constitution — that
is, by the law of its creation — to pass upon the subject-
matter of the suit; and, if that involves merely a determina-
tion of the personal liability of the defendant, he must be
brought within its jurisdiction by service of process within
the State, or his voluntary appearance."  *Pennoyer* v. *Neff*,
95 U. S. 714, 733.

Even a judgment in proceedings strictly *in rem* binds only
those who could have made themselves parties to the pro-
ceedings, and who had notice, either actually, or by the thing
condemned being first seized into the custody of the court.
*The Mary,* 9 Cranch, 126, 144; *Hollingsworth* v. *Barbour*,
4 Pet. 466, 475; *Pennoyer* v. *Neff*, 95 U. S. 714, 727.  And
such a judgment is wholly void, if a fact essential to the juris-
diction of the court did not exist.  The jurisdiction of a
foreign court of admiralty, for instance, in some cases, as
observed by Chief Justice Marshall, " unquestionably depends
as well on the state of the thing, as on the constitution of the
court.  If by any means whatever a prize court should be
induced to condemn, as prize of war, a vessel which was never
captured, it could not be contended that this condemnation
operated a change of property."  *Rose* v. *Himely*, 4 Cranch,
241, 269.  Upon the same principle, a decree condemning a
vessel for unlawfully taking clams, in violation of a statute
which authorized proceedings for her forfeiture in the county
in which the seizure was made, was held by this court to be
void, and not to protect the officer making the seizure from a
suit by the owner of the vessel, in which it was proved that
the seizure was not made in the same county, although the

decree of condemnation recited that it was. *Thompson* v. *Whitman,* 18 Wall. 457.

The estate of a person supposed to be dead is not seized or taken into the custody of the court of probate upon the filing of a petition for administration, but only after and under the order granting that petition; and the adjudication of that court is not upon the question whether he is living or dead, but only upon the question whether and to whom letters of administration shall issue. *Mutual Benefit Ins. Co.* v. *Tisdale,* 91 U. S. 238, 243.

The local law on the subject, contained in the Code of 1881, of the Territory of Washington, in force at the time of the proceedings now in question, and since continued in force by article 27, section 2, of the constitution of the State, does not appear to us to warrant the conclusion that the probate court is authorized to conclusively decide, as against a living person, that he is dead, and his estate therefore subject to be administered and disposed of by the probate court.

On the contrary, that law, in its very terms, appears to us to recognize and assume the death of the owner to be a fundamental condition and prerequisite to the exercise by the probate court of jurisdiction to grant letters testamentary or of administration upon his estate, or to license any one to sell his lands for the payment of his debts. By § 1, the common law of England, so far as not inconsistent with the Constitution and laws of the United States, or with the local law, is made the rule of decision. In the light of the common law, the exclusive original jurisdiction, conferred by § 1299 upon the probate court in the probate of wills and the granting of letters testamentary or of administration, is limited to the estates of persons deceased; and the power conferred by that section to summon and examine on oath, as parties or witnesses, executors and administrators or other persons entrusted with or accountable for the "estate of any deceased person," and "any person touching any matter of controversy before said court or in the exercise of its jurisdiction," is equally limited. By § 1340, wills are to be proved and letters testamentary or of administration are to be granted in the county of

"which deceased was a resident," or in which "he may have died," or in which any part of his estate may be, "he having died out of the Territory." By § 1388, administration of the estate of "a person dying intestate" is to be granted to relatives, next of kin, or creditors, in a certain order, with a proviso in case the person so entitled or interested neglect "for more than forty days after the death of the intestate" to apply for administration. By § 1389, an application for administration must "set forth the facts essential to giving the court jurisdiction of the case," and state "the names and places of residence of the heirs of the deceased, and that the deceased died without a will;" and by § 1391, notice of such application is to be given by posting in three public places in the county where the court is held a notice "containing the name of the decedent," the name of the applicant, and the time of hearing. And by §§ 1493 and 1494, a petition by an executor or administrator for the sale of real estate for the payment of debts must set forth "the amount of the personal estate that has come to his hands, and how much, if any, remains undisposed of, a list and the amounts of the debts outstanding against the deceased, as far as the same can be ascertained, a description of all the real estate of which the testator or intestate died seized, the condition and value of the respective lots and portions, the names and ages of the devisees, if any, and of the heirs of the deceased;" and must show that it is necessary to sell real estate "to pay the allowance to the family, the debts outstanding against the deceased, and the expenses of administration."

Under such a statute, according to the overwhelming weight of authority, as shown by the cases cited in the earlier part of this opinion, the jurisdiction of the court to which is committed the control and management of the estates of deceased persons, by whatever name it is called, ecclesiastical court, probate court, orphans' court, or court of the ordinary or the surrogate, does not exist or take effect before death. All proceedings of such courts in the probate of wills and the granting of administrations depend upon the fact that a person is dead, and are null and void if he is alive. Their jurisdiction

in this respect being limited to the estates of deceased persons, they have no jurisdiction whatever to administer and dispose of the estates of living persons of full age and sound mind, or to determine that a living man is dead and thereupon undertake to dispose of his estate.

A court of probate must, indeed, inquire into and be satisfied of the fact of the death of the person whose will is sought to be proved or whose estate is sought to be administered, because, without that fact, the court has no jurisdiction over his estate; and not because its decision upon the question whether he is living or dead can in anywise bind or estop him, or deprive him, while alive, of the title or control of his property.

As the jurisdiction to issue letters of administration upon his estate rests upon the fact of his death, so the notice given before issuing such letters, assumes that fact, and is addressed, not to him, but to those who after his death may be interested in his estate, as next of kin, legatees, creditors or otherwise. Notice to them cannot be notice to him, because all their interests are adverse to his. The whole thing, so far as he is concerned, is *res inter alios acta.*

Next of kin or legatees have no rights in the estate of a living person. His creditors indeed, may, upon proper proceedings, and due notice to him, in a court of law or of equity, have specific portions of his property applied in satisfaction of their debts. But neither creditors nor purchasers can acquire any rights in his property through the action of a court of probate, or of an administrator appointed by that court, dealing, without any notice to him, with his whole estate as if he were dead.

The appointment by the probate court of an administrator of the estate of a living person, without notice to him, being without jurisdiction, and wholly void as against him, all acts of the administrator, whether approved by that court or not, are equally void; the receipt of money by the administrator is no discharge of a debt; and a conveyance of property by the administrator passes no title.

The fact that a person has been absent and not heard from

for seven years may create such a presumption of his death as, if not overcome by other proof, is such *prima facie* evidence of his death, that the probate court may assume him to be dead and appoint an administrator of his estate, and that such administrator may sue upon a debt due to him. But proof, under proper pleadings, even in a collateral suit, that he was alive at the time of the appointment of the administrator, controls and overthrows the *prima facie* evidence of his death, and establishes that the court had no jurisdiction, and the administrator no authority ; and he is not bound, either by the order appointing the administrator, or by a judgment in any suit brought by the administrator against a third person, because he was not a party to and had no notice of either.

In a case decided in the Circuit Court of the United States for the Southern District of New York in 1880, substantially like *Roderigas* v. *East River Savings Institution*, as reported in 63 N. Y. 460, above cited, Judge Choate, in a learned and able opinion, held that letters of administration upon the estate of a living man, issued by the surrogate after judicially determining that he was dead, were null and void as against him ; that payment of a debt to an administrator so appointed was no defence to an action by him against the debtor ; and that to hold such administration to be valid against him would deprive him of his property without due process of law, within the meaning of the Fourteenth Amendment of the Constitution of the United States. This court concurs in the proposition, there announced, " that it is not competent for a State, by a law declaring a judicial determination that a man is dead, made in his absence, and without any notice to or process issued against him, conclusive for the purpose of divesting him of his property and vesting it in an administrator, for the benefit of his creditors and next of kin, either absolutely or in favor of those only who innocently deal with such administrator. The immediate and necessary effect of such a law is to deprive him of his property without any process of law whatever, as against him, although it is done by process of law against other people, his next of kin, to whom notice is given. Such a statutory declaration of estoppel

by a judgment to which he is neither party nor privy, which has the immediate effect of divesting him of his property, is a direct violation of this constitutional guaranty." *Lavin* v. *Emigrant Industrial Savings Bank*, 18 Blatchford, 1, 24.

The defendants did not rely upon any statute of limitations, nor upon any statute allowing them for improvements made in good faith; but their sole reliance was upon a deed from an administrator, acting under the orders of a court which had no jurisdiction to appoint him, or to confer any authority upon him, as against the plaintiff.

*Judgment reversed, and case remanded to the Supreme Court of the State of Washington for further proceedings not inconsistent with this opinion.*