| JAMES C. GULOTTA, Judge Pro Tem.
William J. Hart appeals the trial court’s denial of his motion to annul judgments decreeing Hart to be an absent person, declaring him dead and placing his parents and siblings into possession of his estate. In his judgment the trial judge concluded that Hart had not met his burden of proving the judgment was obtained through fraud or ill practice.
On June 29, 1992, Hart’s parents and siblings filed a petition to have Hart declared dead based upon Hart’s absence for more than five years. On the same date, an ex parte judgment was rendered declaring Hart dead and placing his parents and siblings in possession of his estate. That estate comprised only his interest in his grandfather’s estate. No attorney, curator or representative was appointed to represent the absentee.
On September 20, 1995, Hart filed a motion to rescind settlement and annul judgment or alternatively, to compel payment of settlement proceeds in the Succession of Adam Haydel.[1] On September 22, 1995, *703 Hart also filed aj^motion to annul judgments or alternatively to recover inheritance in the Succession of William J. Hart. The defendants, Hart’s parents and siblings and the heirs of the Succession of Adam Haydel, responded by filing exceptions of unauthorized use of summary procedure. The trial judge granted the exception filed in the Succession of Adam Haydel, and denied the exception in the Succession of William Hart. He also granted the Hart family’s motion for a directed verdict dismissing Hart’s motion to annul in the Succession of William Hart. In oral and written reasons, the trial judge found that Hart did not meet his burden of proof showing that the judgment was obtained through fraud or ill practice.
Hart seeks review of the judgment granting the exception of improper use of summary proceedings and defendants’ motion for a directed verdict denying his motion to annul. Hart argues that the trial judge erred in holding that (1) evidence that William was alive within five years of being declared dead was irrelevant; (2) William’s whereabouts were unknown for five years; and (3) in failing to annul the June 29, 1992 judgment declaring him dead and placing his parents and siblings in possession of his interest in his grandfather’s estate.
RWe pretermit discussion on the issues raised by Hart on appeal.[2] We conclude that the judgment rendered in the Succession of William J. Hart is null and void under La. C.C.P arts. 2002 and 2003 because of the failure to comply with the provisions of La. C.C. arts. 47 and 54.
Under La.C.C.P. article 2002,
[a] final judgment shall be annulled if it is rendered:
(1) Against an incompetent person not represented as required by law.
(2)- Against a defendant who has not been served with process as required by law and who has not entered a general appearance, or against whom a valid judgment by default has not been taken; or
(3) By a court which does not have jurisdiction over the subject matter of the suit. Except as otherwise provided in Article 2003, an action to annul a judgment on these grounds may be brought at any time.
La.C.C.P. art. 2004 provides that “[a] final judgment obtained by fraud or ill practices may be annulled.”
La.C.C. art. 47 provides for the appointment of a curator to manage an absent person’s property:
An absent person is one who has no representative in this state and whose whereabouts are not known and cannot be ascertained by diligent effort.
When an absent person owns property in this state, the court may, upon petition of any interested party and ajjshowing of necessity, appoint a curator to manage the property of the absent person.
While La.C.C. art. 47 uses the discretionary word “may” when referring to the ap *704 pointment of a curator to manage the property of the absent person, (where the management of the absent persons’ property is involved) no inference can be made that any discretion is reposed with the trial judge where the deprivation of one’s property is in issue. La.C.C. art. 47 refers to the “management” of the absent person’s property only and not to the deprivation of one’s property. Support is found for this conclusion in statutory and judicial pronouncements.
La.C.C. art. 54 provides that a person who has been absent for five years is presumed to be dead. “Upon petition by an interested party, the court shall render judgment declaring the death of an absent person and shall determine the date on which the absence commenced and the date of death.” La.C.C. art. 54.
Prior to an absent person being declared dead, constitutional due process requirements must be met. The United States Supreme Court concluded that the states could not constitutionally make
a judicial determination that a man is dead, made in his absence, and without any notice to or process issued against him,, conclusive for the purpose of divesting him of his property and vesting it in an administrator, for the benefit of his creditors and next of kin, either absolutely or in favor of those only who innocently deal with such administrator. The immediate and necessary effect of such a law is to deprive him of his property without any process of law whatever, as against him, although it is done by process by law against other people, his next of kin, to whom notice is given. Scott v. McNeal, 154 U.S. 34, 50, 14 S.Ct. 1108, 1114, 38 L.Ed. 896 (1894).
Further, both the United States and Louisiana Constitutions guarantee that one |5may not be deprived of life, liberty or property without due process of law. U.S. Const. Amend. XIV; La. Const. Art. 1, Sec. 2; State v. Likens, 577 So.2d 285 (La.App. 3 Cir.1991), writ denied, 580 So.2d 386 (La.1991). The minimum due process requirements for an action that will deprive a person of his or her interest in property were set out in Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 795, 103 S.Ct. 2706, 2709, 77 L.Ed.2d 180 (1983), in which the United States Supreme Court held:
[Pjrior to an action which will affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment, a State must provide “notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.”
In State v. Woodard, 387 So.2d 1066 (La.1980), the Louisiana Supreme Court recognized that procedural due process under the Louisiana Constitution encompasses prior notice and a chance to be heard.
Thus, to meet constitutional requirements, á legislative act establishing a presumption of death and allowing for the opening of an absent person’s succession as the means of determining the rights of others to an absent person’s estate, must include the following: “[T]he court must have jurisdiction over the propei'ty of the individual; notice to the absent person must be attempted; the lapse of time before the presumption can be raised must be reasonable; and finally, some safeguard for the absent person must exist should he return.” J. Carriere, “The Rights of the Living Dead: Absent Persons in the' Civil Law”, 50 La.L.Rev. 901, 914.
There is statutory law in Louisiana which provides for notice to absent persons in certain situations. La.C.C.P. art. 5091 requires the appointment of attorneys to represent absent defendants who have not been served and have not |6made a general appearance. See also: La.C.C.P. art. 5094. The failure to provide notice through the appointment of an attorney to represent the absent defendant makes any judgment rendered against the absentee null and void. See: La.C.C.P. art. 2002.
The Civil Code mandates the appointment of curators for absent heirs. La.C.C. art. 1661 states that “[wjhen of the testator’s heirs some are absent and not represented in the State, the judge shall appoint for them a counsel, whose duty it shall be to assist for them at the inventory of the effects left by *705 the testator, to take care of their interests, and to oppose every thing which may prejudice the same.”
These statutes are designed to protect absentees from the deprivation of property without due process. Just as absentees are entitled to such protection in lawsuits filed against them and in succession proceedings in which they have an interest, absentees are entitled to the same type of protection prior to being declared dead and their successions opened.
Accordingly, we hold that constitutional due process mandates that an absentee be represented by an appointed attorney or curator during proceedings to have the absentee declared dead and his succession opened pursuant to La.C.C. arts. 54 et seq. When a party files a petition to declare an absent person dead, the party shall request the trial court to appoint an attorney to represent the absentee under La.C.C.P. art. 5091. The attorney shall use reasonable diligence to represent the absent person and defend the absent’s person’s interests.
In the instant case, the failure of the trial court to appoint an attorney or curator to represent Hart in the proceedings entitled “Succession of William A. Hart” constitutes a defect in the proceedings rendering the judgments of death Land placing Hart’s heirs in possession of his estate null and void. The trial court’s ruling denying Hart’s motion to annul is reversed and set aside. Judgment is now rendered in favor of William J. Hart annulling the trial court judgments decreeing that Hart “has been an absent person” in excess of five years and is “presumed to be dead” and placing his parents in possession of the usufruct of decedent’s estate and placing his siblings in possession of his estate.
All costs to be assessed against the defendants/appellees.
REVERSED AND RENDERED.

. William Hart’s grandfather, Adam R. Haydel, Sr., died September 19, 1981. Haydel had been married twice, first to Thelma Richard with whom he had three children, namely, Thelma Haydel Hart, Rosemary Haydel Gueringer and Theresa Haydel Roques, and second to Clara Simon with whom he had two children, namely, Cecilia Haydel Robert and Adam R. Haydel, Jr. All five of Haydel’s children survived him. Hay-del left a last will and testament in which he left one-third of his estate to his surviving spouse, Clara Simon Haydel, and two-thirds of his estate to his children in equal shares. The property left to his children was left in five separate and equal trusts with each of.his children named as income beneficiary of his or her respective trust. The will further stated that the trusts were to continue for the life of the beneficiary upon whose death the trust principal would devolve to the beneficiaiy's heirs. Haydel’s succession was opened in 1981 and Cecilia Haydel Roberts was confirmed as executrix on August 19, 1982. For over ten years, numerous conflicts arose among the children concerning the administration of the succession and how the assets of the estate were to be distributed among the children. In 1992, Haydel’s heirs reached an agreement to settle their disputes. In lieu of the trusts established in *703 Haydel's will, each child would receive $200,000. However, since Haydel’s grandchildren would be affected by the settlement, each grandchild had to agree to the settlement and execute the settlement documents. The settlement and compromise agreement was signed on June 29, 1992. William Hart did not sign the agreement. On the same day. Hart's parents and siblings filed the petition to have Hart declared dead and placed in possession of Hart's estate. The trial court, ex parte and summarily, granted the petition and rendered judgment finding William Hart dead and placing Hart's parents and siblings in possession of his estate. William Hart's parents, Thelma and Leonard Hart, and his siblings, Bernadette Hart and Donna Hart Thomas, signed the settlement and compromise agreement as William Hart's heirs.

. Because the panel was concerned with the question of notice or lack thereof, not briefed, and, as a courtesy to all counsel, we requested supplemental briefs on that issue. In somewhat harsh criticism of the panel because of the request for supplemental briefs, appellees' counsel questioned the propriety of the Court's right to express concern on issues not raised in argument. In response to that complaint, we point out that under La.C.C.P. 2164, an appellate court has the authority to "render any judgment which is just, legal and proper on the record.” Comment A under the article provides that "[t]he purpose of this article is to give the appellate court complete freedom to do justice on the record irrespective of whether a particular legal point or theory was made, argued or passed on by the court below.” It appears to this panel that the article and comment are self explanatory.