## SEAL, A FREEDMAN v. THE STATE.

It is not the duty of the judge to give instructions to the jury, which, though correct as abstract principles of law, are not authorized by the evidence.

Where the record contains charges asked by the appellant, but does not show whether they were given or refused, and the refusal of them is not assigned for error, it is to be presumed that they were given as asked.

It is the province of the jury to reconcile a discrepancy or conflict of testimony if possible, and, if not, to give credence to the party who, in their opinion, is best entitled to it; and when in a criminal cause the jury have seen fit to believe the witnesses for the State in preference to those of the defendant, and the judge who tried the cause below has not seen fit to set aside the verdict of guilty on the motion for a new trial, the conviction will not be disturbed in this court.

APPEAL from Williamson. The case was tried before Hon. THOMAS P. HUGHES, one of the district judges.

Indictment for theft of a bell and collar of the value of $2 50.

Slavery ceased to exist in Texas by the proclamations of President Johnson, General Gordon Granger, and Provisional Governor A. J. Hamilton. They became free in the summer and autumn of 1865. By one of the proclamations of Governor Hamilton they were subjected to trials as other persons. And by the 8th section of the consti-

tution of 1866 it was declared, that "Africans and their descendants shall be protected in their rights of person and property by appropriate legislation, * * * * and all criminal prosecutions against them shall be conducted in the same manner as prosecutions for like offenses against the white race, and they shall be subject to like penalties;" and that they "shall not be prohibited on account of their color or race from testifying orally as witnesses in any case, civil or criminal, involving the right of, injury to, or crime against, any of them, in person or property, under the same rules of evidence that may be applicable to the white race." (Paschal's Dig., pp. 943, 944.)

The same principle was more strongly declared, and without any exception on account of color, by the civil rights act of Congress of 9th April, 1866. (Paschal's Dig., Arts. 5382 to 5391.)

On the 9th day of November, 1866, the appellant, "Seal, a freedman of color, formerly the property of William H. Swinney," was indicted for stealing from William B. Henry a bell and collar of the value of $2 50, on the 15th of October, 1856. Henry was the only witness of the State. He swore that his bell and collar were upon his oxen the preceding evening, that is, on the 14th October; that he missed them next morning; that he suspected the accused, because he saw him pass with a wagon that evening; that he pursued the wagon, and came up with defendant and wagon near Brooksville; the negro boy, Charley, was driving the wagon a short distance ahead. "Witness charged defendant with having a bell of his in the wagon, and he, witness, must search the wagon; that defendant called to Charley to stop his wagon, for there was a gentleman wanted to search the wagon for a bell, and that, if there was a bell in the wagon, he could have it; that Charles stopped the wagon; that witness at once searched the wagon, in which were some bed-clothes; that upon mov-

ing the bed-clothes he heard the bell rattle, and upon un-rolling them found the bell and collar, being the same he had lost, carefully rolled up in the bed-clothes, and one corner of a blanket stuffed in the bell; that the collar had been cut apparently with a dull knife; that witness at once charged the defendant with stealing the bell and collar; that defendant replied, 'No, sir, I bought that bell to-day from a negro man, who rode up, riding a white horse, to where I was, and offered to sell me the bell, and I bought it of him, and gave him six bits in specie for it.' That witness then asked Charley if he had a knife, and Charley replied, 'No, sir.' Witness then asked defendant if he had a knife, to which defendant replied, 'Yes, sir,' and showed his knife, a dull one, to the witness; that witness then took his bell and collar and departed; that on the previous evening the defendant's wagon, as shown by the trail, had left its proper road, so as to pass near where the oxen were; that at the time the bell and collar were stolen there were no negroes living in the neighborhood of Brooksville.

"Charles, a freed boy of color, witness for the defendant, being duly sworn, says:

"That he was with Seal, the defendant, during the trip with the wagon referred to by the witness for the State; that on the same morning that the witness for the State found the bell in defendant's wagon, and about half an hour previous to this occurrence, a negro man rode up, riding a white horse, to where this witness and defendant were with the wagon, being a stranger to them both, and carrying this bell and collar, and said to defendant, 'Here, uncle, don't you want to buy a bell?' and offered to sell the bell and collar to the defendant for six bits; that defendant agreed and bought the bell and collar; that witness saw the defendant buy the bell and collar, and saw the defendant pay the negro man the money for them, upon which the negro man rode off; that witness does not

know who the negro man was, and that the collar was cut when defendant bought it; that about half an hour afterwards a gentleman rode up and spoke to the defendant; that the defendant called to witness to stop the wagon, saying there was a gentleman wanted to search the wagon for a bell, and that if the bell in the wagon was his he could have it; that witness stopped the wagon; that the gentleman at once searched the wagon, and found the bell and collar and claimed them; that before the search the bell and collar were not rolled up in the bed-clothes, but were lying partly under the bed-clothes in one corner, and that the gentleman, (the State's witness,) in first examining for the bell, rolled the bed-clothes over and around the bell until the bell rattled, and he unfolded them and found the bell. That the gentleman charged the defendant with stealing the bell; that defendant replied, 'No, sir; I bought that bell this morning of a negro man, who rode up to where I was, riding a white horse; I bought the bell of him, and paid him six bits in specie for it.' That the gentleman asked this witness if he had a knife, to which witness replied, 'No, sir.' That the gentleman then asked the defendant if he had a knife, to which defendant replied, 'Yes, sir,' and showed the gentleman his knife; that the gentleman then took the bell and collar and went away; that it was true that on the previous evening the defendant with his wagon had left the right road for their traveling, which was to get a load of corn in that neighborhood, but this was owing to their having mistaken the road and gone out of their way.

Rebutting for the State.

"William B. Henry, being recalled, says: That he found the bell and collar in defendant's wagon, carefully rolled up in a quilt, and a blanket carefully rolled around that, and that it was impossible for witness so to have rolled them up as stated by witness for defendant."

The court defined theft in the language of the 745th Article of the Penal Code, viz:

"Theft is the fraudulent taking of corporeal personal property, belonging to another, from his possession or from the possession of some person holding the same for him, without his consent, with intent to deprive the owner of the value of the same, and to appropriate it to the use or benefit of the person taking." (Paschal's Dig., Art. 2381, Note 683.)

And the judge concluded his charge thus:

"If from the evidence you believe that the defendant, Seal, did unlawfully, feloniously, and fraudulently take, steal, and carry away the bell and bell-collar, or either of them was of some value, and that the bell and bell-collar, or either of them, was the property of William B. Henry, and said taking was done in this county, then it is your duty to find the defendant guilty, and assess his punishment to confinement in the penitentiary for two years; but, if these facts are not proved by the evidence, then it is your duty to find the defendant not guilty.

"By the law of this State one negro can testify for or against another negro.

"If there is a conflict of testimony in the case at bar between the witnesses, the jury are the exclusive judges of the fact to whom the most credence should be given."

There were charges in the record, signed by the counsel of the defendant, to the effect, that the jury must be satisfied of the guilt beyond a reasonable doubt, and that the possession of stolen property raises only a presumption of guilt, which may be explained away, if the explanation be satisfactory; but there was no indorsement of "given" or "refused."

The jury returned a verdict of guilty, and assessed the punishment at two years' confinement in the penitentiary, which was then the exact penalty of the law for petty larceny. (Paschal's Dig., Art. 2395.) The defendant moved

for a new trial, urging objections to the charge, and that the verdict was contrary to the law and evidence. The motion was overruled and judgment rendered, from which the defendant appealed.

*W. H. Henderson*, for appellant.—The appellant, for reversal of the judgment of the court below and for a new trial, respectfully submits the record, the statement of facts, the charge of the court, and the motion for a new trial, and cites the following authorities: "New trials in cases of felony shall be granted where the court has mis-directed the jury as to the law, or has committed any other material error calculated to injure the rights of the defendant, or where the verdict is contrary to law and evidence." (Code Crim. Pro., Art. 672.) "Also when it is clear that the evidence adduced is not reasonably sufficient under all the circumstances of the case to satisfy the mind of the truth of the allegations." (Chandler v. Meckling, 22 Tex., 37.) "A defendant in a criminal case is presumed to be innocent till his guilt is established by legal evidence, and in case of reasonable doubt as to his guilt he is entitled to be acquitted." (Code Crim Pro., Art. 640.)

*William M. Walton, Attorney General,* for the State.

Willie J.—There is no error in the judgment of the court below for which it should be reversed. The charge of the court was in accordance with the law of the case, as applicable to the facts in evidence. It was not the duty of the judge to give instructions to the jury, which, though correct as abstract principles of law, were not authorized by the testimony produced upon the trial. It certainly was not his duty to give such abstract charges when they were not even asked by the complaining party. There is nothing in the record from which it appears that the charges asked by

appellant were refused, nor is the refusal of them assigned for error. The presumption therefore is, that they were given as asked.

Sufficient testimony was introduced by the State to warrant the jury in finding the defendant guilty as charged in the indictment. In some material points there was a conflict between the testimony given in by the State's witness, and that produced on the part of the defendant. The jury had the witnesses before them, and were the best judges of their credibility. If there was a discrepancy or conflict in their testimony, it was the province of the jury to reconcile it if possible, and, if not, to give credence to that party who, in their opinion, was best entitled to it. They have chosen to disregard the statements of defendant's witness and give credit to the evidence offered by the State; and as the judge who tried the case below, and who of course had every opportunity of seeing the manner of the witnesses at the time of giving their testimony, and of knowing all the other circumstances under which their evidence was taken, did not see proper to set aside the verdict, we see no reason why this court should disturb it. The judgment is

AFFIRMED.