4L 251
9L 605
14L 289

SYLVIA D'ARUSMENT *v.* HENRY T. JONES et al.

ADMINISTRATION. *Upon the estate of a person alive, void.* Administration upon the estate of a living person is absolutely void.

FROM SHELBY.

Appeal from the Chancery Court at Memphis, R. J. MORGAN, Ch.

W. M. RANDOLPH for Complainant.

HUMES & POSTON, GEORGE GILLHAM and ESTES & ELLETT for Defendants.

MCFARLAND, J., delivered the opinion of the Court

The question in this case is the validity of an administration upon the estate of a living person.

The complainant files this bill to have satisfaction of four notes for $1,000 each, executed to her by William C. Harrison on the 15th of January, 1861, and secured by a deed of trust on a tract of land in Shelby county, which she on that day had sold and conveyed to said Harrison. She states that soon after the date of said transaction she left the State of Tennessee, and resided for several years in the States of the North, and afterwards in Europe, returning to this State shortly before the filing of this bill, April 25th, 1874. Upon her return she discovered that during her absence, to-wit. on the 10th of August, 1869, the defendant, David Whitly, had procured letters of administration upon her estate from the County Court of Shelby county, upon the pretext that she was dead, and as such administrator had filed a bill in the Chancery Court of said county against the personal representative and devisee of said Harrison (who had died) and the heir of the trustee in the deed of trust (who had also died) to have satisfaction of said notes, alleging that they had been lost or mislaid.

The cause was compromised, and a decree rendered in favor of said Whitly for $3,500, upon condition that he execute a bond with surety to indemnify the estate of said Harrison, or the devisees of said land, to the extent of said sum of $3,500, against all claims that might be set up by complainant, if alive, or by any assignee of said note. The bond was executed and the money paid. The prayer of the bill is to have satisfaction of the notes out of the trust property, but that Whitly and his sureties be held liable upon his aforesaid bond to the extent of the penalty thereof, in exoneration of the land.

It is conceded that the material allegations of the bill have been established, but it is maintained that Whitly acted in good faith and with due caution upon the belief that complainant was in fact dead, a belief justified by the fact that she had been absent for more than seven years, and the most diligent inquiries among her friends and acquaintances could discover no trace of her, and it is insisted for the defendant that the administration of Whitly should be held so far valid as to constitute a protection to innocent parties who in good faith paid to him money due the complainant.

A similar case has never before arisen in this State, so far as we know. It is a question that has recently attracted some attention. Previous to the decision of the Court of Appeals of New York, in 1875, in the case of *Rodrigas* v. *East River Savings Institution*, 63 N. Y., 485, it seems

not to have been doubted that such an administration would be absolutely void. Chief Justice Marshall said, such an act "all will admit is totally void:". *Geffoth* v. *Frazier*, 8 Cranch, and there are numerous dicta and several decisions to the same effect: *Binson* v. *Ivey*, 1 Yer., 306; *Allen* v. *Dundas*, 3 Term R., 125; *Wilson* v. *Frazier*, 2 Hum., 30; *Jochumsen* v. *Savings Bank*, 3 Allen, 87; Taylor on Evidence, vol. 2, secs. 1490, 1523. The case in 63 N. Y., before referred to, raises the direct question. Administration had been granted upon the estate of one who had been absent and not heard from for more than seven years, and money collected from his debtor: It turned out that he was not in fact dead, and the question was whether the payment made by the debtor was a protection against a second demand. The Judges were divided in opinion—four to three—the majority holding the payment a protection. The decision has been severely criticised by Judge Redfield in 15 Am. Law Reg. It is fair, however, to say that the opinions present that side of the question with all its force, and show that at least something may be said in its favor. The argument may be briefly stated thus: Upon proof of death, the Surrogate was compelled to act and grant administration. Proof of seven years' absence without being heard from was *prima facia* evidence of death which the Surrogate might be unable to rebut, and therefore he was compelled to act, and grant the letters of administration. Armed with these letters, the administra-

tor could demand payment, and the debtor could not resist, and therefore, it being a payment compelled by law, the debtor ought to be protected, especially as it is the acts of the supposed decedent in remaining absent without communicating with his friends for more than seven years that causes the injury, and consequently he, rather than the debtor, ought to suffer.

The decision, however, was to some extent placed upon the Statutes of New York, which were assumed to be peculiar in this respect, that is to say, before administration can be granted the fact of the person's dying intestate shall be proven to the satisfaction of the Surrogate, who shall examine the person applying touching the time, place and manner of the death, and may examine any other persons, and for that purpose compel their attendance as witnesses.

While it is conceded that, in general, the finding by the Court of the fact upon which the jurisdiction depends is not conclusive of the jurisdiction, yet it is maintained that, as in this instance, the Court was required to *hear evidence* and *determine* the facts, the determination must be conclusive until revoked, so far as concerns third persons, who had acted upon the faith thereof. It does not seem clear that an administration granted under such a statute would in this respect be different from administration granted under a statute simply authorizing the granting of administration upon the estates of deceased persons, but it is un-

necessary in the present case to pursue this branch of the inquiry.

The force of the argument in favor of the validity of the administration seems to apply especially to a case of this character, when the assumption of death rests upon the fact of seven years' absence without being heard from, and the hardship of requiring a debtor who has recognized an administrator appointed under such circumstances liable to a second payment, seems peculiarly pointed. It must, however, be in principle immaterial what the proof of death may be as to the effect of the judgment, whether the Court *find* or *assume* the fact of death upon proof of seven years' absence, or upon testimony of witnesses directly to the point, the question must be the same; that is to say, is the *finding* or *assumption* of the fact of death by the Probate Court conclusive until revoked by the same Court, or reversed on appeal, for we have no statute authorizing administration to be granted upon proof of seven years' absence without being heard from. It is simply a common·law rule of evidence, and it has no more force than any other evidence that may turn out to be untrue. Administration granted upon such evidence is no more lawfnl than if granted upon false testimony of witnesses. It may be the misfortune of the parties in interest in either case that for the time being they are unable to show the real truth. In such a case there *is* real hardship in requiring a debtor to pay the second time,

but such is always the effect of holding, as Courts are often compelled to do, that former judgments have been rendered without jurisdiction. The defendants in this case were unable to defeat the demand of Whitly, because they were, unfortunately, unable to prove the real truth. Such misfortune often occurs. The hardship to the debtor cannot be regarded greater than to hold the creditor bound by an administration of his estate in his lifetime. To deprive him of his property and rights by a proceeding of this character, to which, by no sort of construction, can he be regarded as a party, is a violation of first principles. It is said, however, that it is the fault of the supposed decedent in remaining absent for seven years without communicating with friends that gives rise to the presumption of death and causes the injury, and he ought, therefore, to be bound by his own act. The seven years' absence may be wilfull, or it may be the result of insanity, imprisonment, or other misfortune. The failure of friends and acquaintances to be informed as to the residence of the absent one, or that he still lives, may be the result of accident, or other cause. In what cases the conduct of a person in remaining absent and conniving at the acts of a pretended administrator should be held fraudulent and an estoppel, it is unnecessary to inquire, as such is not the present case. Whitly, to whom administration was granted *as next of kin*, turns out to be in nowise related to

complainant, and she could not have anticipated such a proceeding, or be held to have connived at it by remaining absent. A debtor, in a case like the present, could always obtain the indemnity which in this case was obtained, by applying to a Court of Chancery, that is a bond of indemnity against the contingency of the creditor returning alive, an indemnity that, perhaps, ought to be provided by statute, and there could be no more hardship in requiring the debtor to look to such a bond for indemnity than in requiring the creditor to do so. The money, when thus paid, should be recovered back, either by the debtor who has paid it, or by the creditor who returns alive, and if the security of the bond fail, it would be as great a hardship, to say the least of it, to require the creditor to lose it as to throw the loss upon the debtor. Therefore the question of hardship is out of the way, and the fact that the administration was granted upon the proof of seven years' absence forms no exception to the general rule, and we return to the simple question, whether administration upon the estate of a living person is valid. Has a Probate Court, under our statutes jurisdiction to grant administration otherwise than upon the estates of deceased persons?

Our statutes have not the supposed peculiarity of the statutes of New York. They simply authorize administration upon the estates of *deceased persons,* and if the person be not dead, the Court would be acting *ultra vires* to appoint an adminis-

trator. But it is said the Probate Court has jurisdiction to ascertain the fact of death, and its judgment finding that fact is conclusive until revoked or reversed. The general principle is, that the jurisdiction being conceded, the judgment is conclusive of all matters involved, but if the jurisdiction be disproven, then the judgment is void for all purposes. If it be conceded that the jurisdiction rests upon the existence of a particular fact, then it will not do to say that the finding of that fact by the Court is conclusive of its own jurisdiction. for this would be, to use a common expression, " reasoning in a circle." The judgment is conclusive, if the Court has jurisdiction, and its judgment that it had jurisdiction is conclusive of the jurisdiction. There may be, in some cases, confusion as to what constitutes the jurisdictional facts, but this would seem to be about as clear an illustration of it as could be found. That a Probate Court has assumed that a certain person is dead, and has granted administration upon his estate, when in fact he was not dead.

A similar illustration is given by Chief Justice Marshall. He says: " If by any means whatever a prize court should be induced to condemn as a prize of war a vessel which was never captured, it could not be contended that the condemnation operated as a change of property."

The proper distinction is illustrated in the case of *Allen* v. *Dundas*, 3 Term Rep., 125, where it was held that payment to one named as executor

in a forged will, which had been presented and
allowed in the prerogative court, was a protection
against the demand of one who had procured the
proceedings on the forged will to be set aside and
himself appointed administrator, *this,* upon the
ground that the person *being dead,* the Court had
jurisdiction.    But the Judges said that if the
person were not in fact dead, the whole proceed-
ing would be void.    So that the jurisdiction rests
upon the *fact of death,* and this being clearly shown
untrue, it must result that the entire proceeding
was without jurisdiction and void.    For at least
it sounds almost absurd to say that any man is
to be bound by the judgment of a Probate Court
that he is dead.    The argument that the Court
has jurisdiction to ascertain the fact of death is
fallacious, for this must assume that the Court
may decide the question either way, and if it con-
cludes that the person is not dead, then it has no
jurisdiction for any purpose.    While the Court
may hear evidence of the death, the fact is gen-
erally *assumed,* and if the Court undertake to put
its finding of the fact in the form of a judgment,
it gives it no greater validity.    This conclusion is
sustained by the great weight of authority.    The
direct question was fully considered, in a case pre-
cisely similar, by the Supreme Court of Massachu-
setts, and this view held by the unanimous opinion
of the Court.    See *Jochumsen* v. *Savings Bank,* 3
Allen, 87.

The principle is directly involved in the case of

*Thompson* v. *Whitman*, 18 Wall., 457. By the laws of New Jersey it was made unlawful for anyone not at the time a resident or inhabitant of the State, to gather clams, oysters or shell fish in the waters of that State, and the law authorizes the seizure of the vessel and its forfeiture, which may be declared by any two Justices of the Peace of the county in which the seizure occurred. The suit was in the United States Court against the Sheriff who had carried away the vessel.

The defense was the judgment of condemnation of two Justices of the Peace of New Jersey, *which judgment recites the fact that the vessel had been seized in their county.* This was held not conclusive, and it being shown that the seizure *was not in the county,* the judgment of condemnation was held void.

Our own case of *Wilson* v. *Frazier*, 2 Hum., 30, was where administration was granted in two different counties about the same time. Judge Reese said, " the letters granted in the county other than the county of the intestate's residence were void."

Other similar cases are referred to in the case of *Jochumsen* v. *Savings Bank*, 3 Allen, 87. If the judgment of the Probate Court as to the residence of the intestate is free from a collateral attack, it can hardly be said that the judgment of the Court as to the death of the party can stand upon a higher ground. In fact, so far as our researches have gone, the case of *Rodrigas* v.

*East River Savings Institution* stands alone, and even that decision seems to have been rendered doubtful upon a second hearing of the case. See 19 Am. Law Journal.

As a further argument against the validity of the administration, we need only see to what it would lead. If the administration was valid until revocation, as argued in the present case, then it must result that the decree of the Chancery Court in the bill filed by Whitly to collect these notes was likewise conclusive, for in that view it was a bill filed by one who was, for the time being, properly authorized to act as administrator to collect assets due the estate. The proper defendants were made, and the Court had jurisdiction of the subject matter, and the decree rendered in the cause must, in that view, be held conclusive upon all parties. But suppose the decree had been in favor of the defendants in the cause, that no such note had ever been executed, or that they had been paid, would the complainants in this cause be bound by the adjudication? Is it possible that she could thus lose her property and rights by a proceeding to which she was in no sense a party? The decree was, in fact, for only part of the debt.

Without attempting to further follow the discussion into refinements, it is sufficient to say that it will at least bring us back to the plain common sense view of the question, to which we think there is no sufficient answer, and that is, that

there is no law. for administering upon one's estate until after he is dead, and that no living man is bound by the *adjudication* of a court that he is dead.　It might be different if we had a statute such as exists in Rhode Island, or such as the New York Court seems to have construed theirs to be, providing that after an absence for a given time one's estate may be administered upon as if he were dead, subject only to his right to reclaim the proceeds, in the event he return.　Even then it would be a question whether this would not be depriving a man of his property without due process of law.　See Albany Law Journal of May 15, 1880, p. 383.　But, at any rate, we have no such statute.

We hold the entire proceedings void.　We also hold Whitly and his sureties on his bond of indemnity liable, to the extent of the penalty, for the money received by him.　The amount thus realized will be paid to complainant in exoneration to that extent of the trust property: 1 Lea, 586. It appears that some of the persons to whom Whitly distributed the funds have voluntarily paid to complainant part of the amount.　An account of this, as ordered by the Chancellor, will be taken, and the amount credited on the decree on the indemnity bond.　Under the circumstances, we disallow interest during the war, and until June 1st, 1865, in accordance with our holding in similar cases, upon the ground that the parties were, for the time being, separated by the lines of the hostile,

armies, and occupied toward each other the relation of public enemies, between whom commercial intercourse was forbidden.

With this modification, the decree of the Chancellor will be affirmed, and the cause remanded, and the costs of this Court divided.

FREEMAN, J., delivered the following dissenting opinion:

I am unable to agree with the conclusion reached by the majority of the Court, for the following, among other reasons:

I think it a principle that runs through all our jurisprudence, that acts done by parties having *prima facie* legal authority to do them, as to third parties, are valid. The party may not be able to make good his claim to the position assumed by him, or the authority claimed, when brought directly in question, and he may be declared not entitled to it, or his authority revoked, or declared invalid, yet as to third parties acting on the faith of the apparent authority, they are protected, and the acts done as valid as if the authority was complete, or the position assumed by the party one to which he had the legal right. The case of an officer *de facto* illustrates this principle. The party who is in an office, and who assumes its functions, whether he has authority by law to do so or not, may do all the acts incident to such office, and as to third parties, they are held as

D'Arusment *v.* Jones.

valid and effective as the acts of an officer *de jure.*
Surely the act of a court of competent jurisdic-
tion ought to have equal validity and equal force,
when the fact of want of jurisdiction does not
appear on the face of its proceedings, as it does
not in this case, but has to be made out by inde-
pendent proof *de hors* the record. But this case
is still stronger. On the facts as presented to the
Court at the time of granting the letters of ad-
ministration, that is, proof of absence from the
country for seven years, without being heard from,
the Court could not have refused to grant the
letters of administration. Why? Because it had
power to grant letters, on legal evidence of death
of a party, and these facts constituted such evi-
dence. When shown, the law said she was dead.
It was legal proof of the fact. In law, the fact
of death appeared to the Court. If administra-
tion had been refused, the applicant could have
appealed to the Circuit Court, and if refused there,
on these facts this Court would have reversed their
action and compelled the grant. Is it possible
that, on this state of facts, the act is void, and
confers no authority? It might be, in such a
case, that the letters would be granted on proof
of a state of facts giving legal authority for the
action of the Court, and under a judgment of
this, the Court of last resort in the State, and
that a judgment perfectly valid on its face, the
only one the law allowed, and yet on the theory
of the majority opinion, all the acts done under

this judgment would be void, and third parties be held to have obeyed the judgment at their peril and in their own wrong.

Suppose the County Court had refused to grant the letters on *procedendo* and mandate from this Court, would not a mandamus be issued to compel them to do so? If on mandate to do so, after the right had been adjudged, the Justices had refused to comply, would we not commit them for contempt? Most assuredly. Can we rightfully compel a Court or anyone else to do an act not authorized by law, but forbidden by it? If it be required by law, can it be void by the same law? If so, why, and by what process of reasoning is the conclusion reached? I am at a loss to see the reason. The opinion furnishes none. The act, then, of the Court was legal when done. If so, was not the authority conferred by it also legal? What was that authority? To collect the assets, the debts due the adjudged intestate, to enforce such collection by process of law, if necessary. He could then compel the payment of these debts in this case. If so, it was the legal duty of the debtors to pay, so that we have the strange conclusion, that what the law compels a man to do, is unlawful, and where the law imposes a duty, the performance is by the same law unlawful, and the act void. If this is not self contradictory, and an argument that destroys itself, I am at a loss to see what would be. Whatsoever a proposition is stated, the opposite of which is a contradiction

and absurd, we may be sure the proposition is true. So when we assert that of which the opposite is admitted to be true, we may be certain our proposition is false and unsustainable. Now we are compelled, on the theory of the opinion, to assert the act of granting the letters and payment by these parties was wrong, and yet admit that it was legal, and could have been compelled to have been by law, the Court and the parties could have done nohow else. With all this, we now hold both acts void and illegal, The answer to this I am unable to see, and until I do, I must dissent from the conclusions based on such premises. In reply to the radical error in the opinion, as I think, that the Court had no jurisdiction to grant letters of administration except on a dead man's estate, I need but say that the Court had jurisdiction of the question, the subject matter. Jurisdiction is conferred by law. Whether the facts on which the jurisdiction could be exercised depends on these being made to appear by proof. That was a matter for the judgment of the Court acting on the facts before it. The proof may not have been sufficient, but we are not revising that judgment, and therefore called on to weigh it. But, as I have shown, the case was made out, and on the facts the authority for its action was complete, and therefore the act, when done, was the only legal judgment that could have been rendered. This being so, on even the principle of the opinion, that in a case of death of a party

the Court had legal authority to act, because the
death was legally proven. Yet this act is held
void, by reason of subsequent proof developed, and
the effect declared to render all who acted under
this authority illegal and void. ο This involves the
proposition that a third party is to obey the
judgment of a Court of competent jurisdiction,
valid on its face,ο at his peril, that peril being that
it may turn out the proof was not sufficient,
or after proof may show that the Court erred in
what it did. This principle would be subversive
of all sound policy, and compel every man to
guarantee the correctness of the action of the ju-
dicial tribunals of the country. Surely the citizen
ought to have some benefit from the generally
conceded legal presumption in favor of the regu-
larity of their action. The result I would reach
is, that the subsequently developed facts furnish
the ground for vacating or revocation of the letters,
but being granted properly at the time, all acts
done under their authority should be held valid.

This, it seems to me, is more in accord with
sound legal analogies, and better agrees with a wise
public policy. In support of this, I suggest that
such cases are rare, this being the first in this
Court since the existence of our State, eighty odd
years. They can never occur without more or less
neglect of attention to property and interest on
the part of the claimant. Such neglect, and such
protracted absence, without notice of whereabouts,
furnishes in law the ground for such an adminis-

tration. The party must be assumed to have acted with a knowledge of the law on this subject, and having made the case by his own negligent conduct, ought not to be allowed to aver the action of others on the fact as a wrong. The principle is that no man can assign the result of his own conduct as a legal wrong, much less hold third parties responsible for such results. This is a self-evident proposition. The theory of the majority opinion is that it may be done.

Which ought to suffer, the party who has contributed at least in some degree to the injury, or parties wholly innocent of all wrong? In fact, it may be maintained that the present complainant has made out, by her own conduct, the entire case, requiring the action of the County Court and the grant of the administration. What she did had authorized it by law. Yet she is now allowed to come in and make innocent third parties, who acted under the facts as she made them, suffer heavy loss for her gain. To this I cannot assent.

Upon petition to rehear, McFarland, J., said:

We have been asked to rehear this case on account of its novelty. The only additional argument offered is a review of the question in the American Law Review, of May, 1880. This article concedes that the weight of authority is in favor of our conclusion, and refers to additional authorities in its support that we have not had access to: *Moore* v. *Smith,* 11 Rich (law) S. C., 569: *Meha* v.

*Simmons,* 45 Minn., 334. The author only undertakes to say that something may be said on the other side of the question, and puts forth, somewhat doubtingly, the suggestion that the jurisdiction does not depend upon the fact of death, but upon the allegation of the fact in the application for letters of administration.

If disposed to enter further with the discussion. we think it could be shown that this position is unsound. But we are content to rest our conclusions upon the reasons and authority already given

The other points in the petition have been fully considered in the foregoing opinion.

As to the interest after June, 1865, while it is true that complainant was absent with the notes in her possession, so that they could not have been paid, yet it is not shown that the defendants were ready or desired to make payment, or that they lost the interest.

Petition to rehear dismissed.