PETER CARR *vs.* JOHN A. BROWN *et al.*

WASHINGTON—JULY 26, 1897.

PRESENT: Matteson, C. J., Stiness, Tillinghast, Wilbur, Rogers, Douglas and Bosworth, JJ.

To administer upon a person's estate while he is still living is to deprive him of property without due process of law, and is in violation of Article 1, Section 10, of the Constitution of this State, and also of Article 14, of the amendments to the Constitution of the United States.

The words "*due process of law*" mean a course of legal proceedings according to those rules and principles which have been established in our system of jurisprudence for the protection and enforcement of private rights, and which require

    *1st,* a court of competent jurisdiction to pass upon the subject matter of the suit or proceeding ; and

    *2nd,* a trial or proceeding in which the rights of the parties, after notice and opportunity to be heard, shall be duly adjudicated.

Tested by these rules Pub. Laws R. I. cap. 298 is both unconstitutional and violative of the common law rights of the person whose estate is sought to be administered upon thereunder.

While the court should ponder well before declaring an act of the General Assembly unconstitutional, and should resolve every doubt in favor of its validity, yet, having observed these rules and come to the conclusion that the act violates some constitutional right, it is the plain and imperative duty of the court to declare it void.

ASSUMPSIT to recover money received from plaintiff's estate and administered upon in his life-time under the provisions of Pub. Laws R. I. cap. 298. Heard on demurrer to special pleas in bar, raising constitutional questions.

TILLINGHAST, J. This is an action of assumpsit to recover money which came to the hands of the defendants from the

plaintiff's estate, which has been administered upon during his life-time. The defendants have filed special pleas in bar, in which they set up that more than seven years before letters of administration were taken out on plaintiff's estate he had left his home in South Kingstown, where he was a domiciled inhabitant, and that during all of said time he had not been heard from either directly or indirectly ; that notice of intention to apply for letters of administration by Bridget McGuire, a sister of the plaintiff, was given for the period of three months ; that further notice by publication was afterwards ordered and given by the Probate Court, and that thereupon, upon proof to the satisfaction of said court that notice had been given for three months as aforesaid, and also that said additional notice had been given as ordered, it was adjudged that the petition be granted ; and the defendant, John A. Brown, was thereupon appointed administrator on the estate of the plaintiff. The pleas further set up that said Brown thereupon proceeded to administer upon said estate in the usual way ; that he settled his account with the Probate Court, and thereupon, after three years from the time when said administration was granted, he distributed said estate according to law. Wherefore he prays judgment, &c.

To these pleas the plaintiff demurs on the grounds : (1) That the proceedings in the Court of Probate, recited in said pleas, were and are null and void, as the plaintiff was then and now is living. (2) That to take and appropriate the estate of a living person, in the manner described in said pleas, would be to take private property without due process of law, and such a construction of the statute would be contrary to the constitution of this State. (3) That said Court of Probate acquired no jurisdiction of the plaintiff's personal property and estate.

The action of the Probate Court, and the proceedings in connection therewith, were had in pursuance of Pub. Laws R. I. cap. 298, passed April 18, 1882, which is as follows : " Whenever it shall be proved to the satisfaction of the court of probate of any town that any person domiciled in such town at the time of his departure has left his home and not been

heard from directly or indirectly for the term of seven years, and that a notice of intention to apply for letters of administration, or to prove the last will and testament of such person, has been published for three months in each issue of some newspaper in the city of Providence, and also in each issue of some newspaper in the county in which he was domiciled, and been posted for three months in three or more public places in said town, and that such other notice as the court may deem best has been given to the relations and heirs, the last will and testament of such person may be proved, and letters of administration may be granted on such person's estate as if he were dead. The notices shall contain a brief description of such person, his age, name and such other characteristics as shall identify him, and no distribution of his estate shall be made until three years after administration has been granted under the provisions of this section." Pub. Stat. R. I. cap. 184, §.9, which is a continuation of the same subject, is as follows: "If such person shall afterwards return to this state, or shall constitute an agent or attorney to act in his behalf, the executor or administrator as aforesaid shall be accountable for, and shall deliver to such person or his lawful agent or attorney, all the estate of every kind which shall then be in his hands as executor or administrator as aforesaid, after deducting such sum or sums as the court of probate shall allow, in the settlement of his accounts, for any payments or disbursements which he may have legally made in his said capacity, or which said court of probate may think reasonable to allow for his personal trouble in executing the trust of executor or administrator as aforesaid."

Although statutes of similar import have existed in this State for more than a century, no case of this sort has ever before arisen thereunder, so far as we are aware ; and we are therefore called upon to decide the question raised without the aid of former adjudications, so far as our own State is concerned. For, although this statute was before the court in *Southwick* v. *Probate Court of Middletown*, 18 R. I. 402, yet it was only in connection with the question of the sufficiency of the notice to prove the will in question,

and hence the decision in that case has no bearing upon the question as to the constitutionality of the law.

It will be observed that said statute does not require the Probate Court to find that the person whose estate is sought to be administered is dead, before proceeding to exercise jurisdiction, but only that he has been absent from his home without being heard from directly or indirectly for the period of seven years. This fact being made to appear, the court is given jurisdiction, after the required notice is given, to proceed *as if the person were dead.* The main question which is raised, then, is whether the General Assembly has power to pass an act authorizing the estate of a living person to be administered upon as if he were dead.

We think it is very clear, both upon reason and authority, that it does not have this power. To administer upon a person's estate while he is still living is to deprive him of property contrary to the law of the land, or, as it is ordinarily said, without due process of law ; and hence is in violation of Article 1, Section 10 of the Constitution of this State, and also of Article 14 of the amendments of the constitution of the United States.

What is due process of law, within the meaning of constitutional provisions like these, has been many times expounded by the Supreme Court of the United States, and also by the highest courts of the various States. And the results of these interpretations may be briefly summed up by saying that the words " due process of law " mean a course of legal proceedings according to those rules and principles which have been established in our systems of jurisprudence for the protection and enforcement of private rights. *Pennoyer* v. *Neff*, 95 U. S. 714, 733. Those rules require that there shall be a court of competent jurisdiction to pass upon the subject matter of the suit or proceeding, and that there shall be a trial or proceeding in which the rights of the parties, *after notice and opportunity to be heard*, shall be duly adjudicated. The words " due process of law in this place," as said in *Lavin* v. *Bank*, 18 Blatchf. 1, 23, "cannot mean less than a prosecution or suit instituted and conducted accord-

ing to the prescribed forms and solemnities for ascertaining guilt, or determining the title of property. It will be seen that the same measure of protection against legislative encroachment is extended to life, liberty and property ; and, if the latter can be taken without a forensic trial and judgment, there is·no security for the others. If the· legislature can take the property of A. and transfer it to B., they can take A. himself and either shut him up in prison or put him to death. But none of these things can be done by mere legislation. There must be ' due process of law.' "

The following terse exposition of this constitutional guaranty is furnished by the Supreme Court of New York, in the case of *Taylor* v. *Porter*, 4 Hill, 140, 145. ·Mr. Justice Bronson there says :   "The words 'by the law of the land,' as here used," *i. e.* in the State constitution, "do not mean a statute passed for the purpose of working the wrong. That construction would render the restriction absolutely nugatory and turn this part of the constitution into mere nonsense. The people would be made to say to the two houses, 'You shall be vested with the legislative power of the State, but no one shall be disfranchised, or deprived of any of the rights or privileges of a citizen, unless you pass a statute for that purpose ;' in other words, 'You shall not do the wrong unless you choose to do it.'"   See also *United States* v. *Cruikshank*, 92 U. S. 542, 554 ;   *Walker* v. *Sauvinet*, 92 U. S. 90 ;  *Doyle, Petitioner*, 16 R. I. 537 ;  *Cross* v. *Brown, Steese & Clark*, Index RR, 54, 65 ;  Cooley's Con. Lim. 6 ed. p. 431 ;  6 Am. & Eng. Ency. L. 43 *et seq.*

Tested by these rules the statute aforesaid, under which a man's property may be taken without his knowledge or consent, and in a proceeding in which he is not a party and of which he has no notice, must be held to be clearly violative both of his constitutional and also of his common-law right. Indeed the whole proceeding, so far as he is concerned, is *res inter alios acta.*

In *Lavin* v. *Bank, supra*, which was a case where the original letters of administration were issued by the Court of Probate of Cranston, in this State, under the statute in

question, and where afterwards ancillary letters of administration were taken out in New York, the court, after holding that the payment by the defendant bank to said administrator there was no defence to the suit, said : "It is also claimed that, if the New York letters are void, the payment to the administrator may be justified under the Rhode Island letters, on the principle that, though a foreign administrator cannot sue here without obtaining ancillary letters, yet a payment to him is a good payment and discharges the debt (*Parsons* v. *Lyman*, 20 N. Y. 103). But it is clear that the Rhode Island letters have no greater validity than the New York letters. The Rhode Island statute undertakes to do directly what the New York statute aims to accomplish by the more indirect method of declaring a judicial decision conclusive against a person not a party to it. In Rhode Island, the court does not go through the form of deciding that the person is dead, but, conceding that he is only absent, distributes his estate 'as if he were dead,' without the service of any notice or process upon him whatever. I do not see how any respectable argument can be made that this is not depriving him of his property without due process of law, or how it can be necessary, or reasonably proper, for the proper government of the persons and the property within the jurisdiction of the State." This decision is cited with approval by the Supreme Court of the United States in *Scott* v. *McNeil*, 154 U. S. 34, 49.

The *general* question as to whether any court has, or can have, jurisdiction to grant letters of administration on the estate of a living person, has been much discussed, and while the authorities are not entirely harmonious, yet the great weight thereof is clearly against the existence of any such jurisdiction. The ground upon which most of the decisions rest is that, in order to confer jurisdiction upon a court to grant letters of administration upon a person's estate, that person must be in fact dead ; and that if he is not dead there is no estate to administer upon, and hence no jurisdiction. Mr. Freeman, in discussing this question in his work on Judgments, says : "The question occasionally arises whether

the grant of letters testamentary or of administration on the·
estate of a person in fact living, but supposed to be dead, is
an act beyond the jurisdiction of the court, and, therefore,
so utterly void that no person is protected in dealing with the
executor or administrator while his letters remain unrevoked.
The weight of authority is very decidedly to the effect that
the decease of the supposed decedent is a prerequisite to the
jurisdiction of the court, and that he is wholly unaffected by
the proceedings for the settlement of his estate." In line
with the doctrine here announced, it is said in *Melia* v. *Sim-
mons*, 45 Wis. 334 : " The proceedings of administration,
settlement and assignment of the estate' of the respondent,
represented to have been dead when he was and still is alive,
are absolutely null and void, for all purposes whatsoever . .
. . . . . . . The county court of Dodge County, or any
other court has no jurisdiction in this particular case or in
such a class of cases. There is no class of cases which em-
braces the administration of the estates of living persons as
if they were dead. The proceedings are void *ab initio* and
throughout. If this case falls within any class of cases, it is
a class in which no court has any right to deliberate or render
any judgment, and in which every conceivable act is an ab-
solute nullity. The only jurisdiction the county court has in
respect to the administration of estates, is over the estates of
*dead* persons. It would seem that the bare statement of
such a proposition is enough, without citing authorities." In
*Thomas* v. *The People*, 107 Ill. 517, 521, the Supreme Court
of Illinois, in an able opinion by Mr. Justice Mulkey, takes
the same view. ` The same doctrine has been either adjudged
or recognized in Massachusetts, in *Jochumsen* v. *Bank*, 3
Allen, 87 ; *Waters* v. *Stickney*, 12 Allen, 1, 13 ; *Day* v.
*Floyd*, 130 Mass. 488 ; in Pennsylvania, in a series of cases
beginning in 1824 ; see *Devlin* v. *Commonwealth*, 101 Pa.
St. 273 ; in Texas, in *Withers* v. *Patterson*, 28 Tex. 491, 499;
in Kentucky, in *French* v. *Frazier*, J. J. Marsh, 425 ; in
Tennessee, in *D'Arusment* v. *Jones*, 72 Tenn. 251 ; in New
Hampshire, in *Morgan* v. *Dodge*, 44 N. H. 255 ; in North
Carolina, in *State* v. *White*, 7 Iredell, 116 ; in Alabama, in

*Duncan* v. *Stewart,* 25 Ala. 408 ; in California, in *Stevenson* v̇. *Superior Court,* 62 Cal. 60 ; in Missouri, in *Johnson* v. *Beazley,* 65 Mo. 250, 264 ; and in many other States. See also 1 Woerner Am. Law of Adm. §§ 208 *et seq.,* where the same view is taken and our statute commented on, and note to *Bolton* v. *Schriever,* 18 L. R. A. 242. To this array of authorities there are to be added the decisions of the Supreme Court of the United States in *Griffith* v. *Frazier,* 8 Cranch. 9, and the recent case of *Scott* v. *McNeil, supra,* in which last named case Gray, J., in an exhaustive and learned opinion, after discussing the entire subject and reviewing all the cases, comes to the conclusion that administration cannot legally be granted on the estate of a living person, and that to deprive one of his property in a proceeding of this sort is unconstitutional. The reasoning in that case is so cogent, and the result so authoritative, especially as to the constitutional question involved in the case at bar, that further citations would seem to be unnecessary.

Opposed to all this there is practically, so far as we are aware, but the single case of *Roderigras* v. *Savings Institution,* 63 N. Y. 460, where the court, by a bare majority, held that, under the provision of the statutes of that State conferring upon surrogates jurisdiction over the subject of granting letters of administration, the inquiry of the surrogate as to the death of the person, upon whose estate administration is applied for, is judicial in its nature ; and that the surrogate has jurisdiction to determine it upon sufficient evidence ; and also that letters issued by him upon due proofs are conclusive evidence of the authority of the administrator to act until the order granting them is reversed on appeal or the letters are revoked or vacated, so far at least as to protect innocent persons acting upon the faith thereof. The decision in that case has been much criticized (see articles in Albany Law Journal, vol. 21, pp. 65 and 84 ; *D'Arusment* v. *Jones, supra,* 15 Am. Law Reg. 1.; 1 Woerner Am. Law of Adm. § 210), and, so far as we are aware, has never been followed outside of said State except in the case of *Scott* v. *McNeil,* in Washington Territory, which, as we have already seen, has since

been expressly overruled by the Supreme Court of the United States, although it was cited with approval in *Plume* v. *Savings Institution*, 46 N. J. L. 211, 230. In that case, however, it was not even surmised that the alleged decedent was not in fact dead.

We are not unmindful of the rule that has been laid down in this State and elsewhere, that the court should ponder well before declaring an act of the General Assembly to be unconstitutional, and that it should resolve every doubt in favor of the validity of the act. *State* v. *Dist. of Narragansett*, 16 R. I. 424, 440. But if, having observed this rule, the court comes to the conclusion that the act is violative of some constitutional right, its plain and imperative duty is to declare it to be void. *Taylor* v. *Place*, 4 R. I. 324. The case was originally heard by the Appellate Division, which then consisted of three justices. Owing to the importance of the question, however, and in view of the fact before referred to that said statute has long been upon the statute book, it was thought proper to have the case re-submitted on briefs to the entire court, which has been done. And, after a full and careful consideration, we are all of the opinion that, in so far as said statute authorizes the estate of a living person to be administered upon, it is unconstitutional and void.

We do not wish to be understood, in what we have said in this case, as expressing any opinion upon the validity of the statute which authorizes administration upon the estates of persons under imprisonment for crime.

Demurrer sustained, and case remitted to the Common Pleas Division for further proceedings.

*Albert B. Crafts*, for plaintiff.

*Nathan B. Lewis and Dexter B. Potter*, for defendants.