(98 N. W. Rep. 705.)'

---

WILLIAM J. CLAPP, SPECIAL ADMINISTRATOR OF LOUIS HOUG *v.* LOUIS HOUG, OTHERWISE KNOWN AS LOUIS H. OLSON.

Opinion filed February 11, 1904.

**Subdivision 2 of Section 6325, Rev. Codes 1899, Unconstitutional.**

1. Subdivision 2 of section 6325, Rev. Codes 1899, providing for the appointment of a special administrator in cases where "the death of the person whose estate is in question is not satisfactorily proved, but he is shown to have disappeared under circumstances which afford reasonable grounds to believe either that he is dead, or has been secreted, confined, or otherwise unlawfully done away with," is invalid, as depriving the person of his property and its possession without notice or due process of law, when applied to the property of a person living, although such special administrator has no power to administer such estate generally.

**Taking Possession of Property by Special Administration.**

2. The taking of the possession of the property of such person under letters of administration issued without notice is not such notice to such owner as will validate the proceedings

**Such Possession Not Proper Exercise of Police Power.**

3. The taking of possession of a person's property under such circumstances cannot be upheld as a proper exercise of the police power of the state.

**Costs.**

4. Costs and disbursements incurred by such special administrator, acting in good faith, are not a legal charge against such person or his property, as the proceedings are wholly void.

Appeal from District Court, Grand Forks county; *Fisk,* J.

Proceedings between William J. Clapp, special administrator of Louis Houg, and Louis Houg, otherwise known as Louis H. Olson. From the judgment the administrator appeals.

Affirmed.

*F. H. Peterson* and *William J. Clapp, pro se.*

It is conceded that the property in the special administrator's hands should be turned over to the respondent; but appellant should be allowed his disbursements and fees. The case at bar differs from *Scott* v. *McNeil,* 154 U. S. 34, 14 Sup. Ct. Rep. 1108, 38 L. Ed. 896, and cases therein cited. In this they were all cases of straight administration. No administrator can be appointed upon the estate of a living person. In the case at bar, no general administrator was appointed.

By paragraph 2 of section 6325, Rev. Codes 1895, no general administrator is contemplated, nor a change of form of personal property, nor its disposition or distribution. The duties of an administrator under this section are to collect and hold property until the return of the owner, or proof of his death and the appointment of an administrator. Upon the occurrence of either of these events, the property is to be turned over to the person entitled to receive it. The purpose of the statute is to preserve the property from waste, depreciation and forfeiture for taxes. The effect of the provision is not the disposal of property without due process of law, but to protect it, and turn it over to the owner or his duly appointed representatives. The statute in question is a copy of that of New York and other states, and its validity has never been questioned in any state where it is in force.

*Guy C. H. Corliss,* for respondent.

By the statute in question, the legislature assumes to vest in the county courts jurisdiction over the estates of living persons, and section 6325, Rev. Codes, so far as it assumes to give jurisdiction to appoint a special administrator of the estate of a living person, is a nullity. Administration proceedings as to the estate of parties living are a nullity. *Allen* v. *Dundas,* 3 T. R. 125; *Griffith* v. *Frazier,* 8 Cranch. 9, 3 L. Ed. 471; *Burnes* v. *Van Loan,* 29 La. Ann. 560-563; *Jochumsen* v. *Suffolk Sav. Bank,* 3 Allen 87; *Moore* v. *Smith,* 73 Am. Dec. 122; *Melia* v. *Simmons,* 45 Wis. 334; *Andrews*

v. *Avory,* 14 Gratt. 229, 73 Am. Dec. 355; *Withers* v. *Patterson,* 27 Texas 495, 86 Am. Dec. 643; *Morgan* v. *Dodge,* 44 N. H. 255, 82 Am. Dec. 213; *Duncan* v. *Stewart,* 25 Ala. 408, 6 Am. Dec. 527; *McPherson* v. *Cunliff,* 11 S. & R. 422, 14 Am. Dec. 642; *Stevenson* v. *Superior Court,* 62 Cal. 60; *Johnson* v. *Beazley,* 65 Mo. 250, 27 Am. Rep. 276; *D'Arusement* v. *Jones,* 4 Lea. 251, 40 Am. Rep. 12; *Thomas* v. *People,* 107 Ill. 517, 47 Am. Rep. 458; *Waters* v. *Stickney,* 12 Allen. 1-13; *Day* v. *Floyd,* 130 Mass. 488; *French* v. *Frazier,* 7 J. J. Marsh, 425-427; Peebles' App. 15 S. & R. 39-42; *State* v. *White,* 29 N. C. 116; *Perry* v. *Railway Co.,* 29 Kan. 420-423; *Devlin* v. *Commonwealth,* 101 Penn. St. 273, 41 Am. Rep. 710.

. Even if the statutes and constitution of North Dakota permitted administration proceedings with respect to the property of living persons, such proceedings would constitute taking property without due process of law, within the meaning of the fourteenth amendment to the Federal Constitution. The proceedings are not directed against the person as a living person, or against him at all, and he has no notice whatever thereof; the assumed proceedings, therefore, are void in so far as they attempt to affect his property rights, as to accord them such effect would be to deprive the living owner of his property without due process of law. *Thomas* v. *People,* 107 Ill. 517, 47 Am. Rep. 458; *Thompson* v. *Whitman,* 18 Wall. 457, 21 L. Ed. 897; *Wheelwright* v. *Depeyster,* 1 Johns. 471, 3 Am. Dec. 345; *Rose* v. *Himely,* 4 Cranch. 269, 2 L. Ed. 608; *Carr* v. *Brown,* 38 Atl. Rep. 9; *Levan* v. *Bank,* 18 Blatchf. 1 Fed. Rep. 641; *Scott* v. *McNeal,* 154 U. S. 34, 14 Sup. Ct. Rep. 1108, 38 L. Ed. 896; *Epping* v. *Robinson,* 21 Fla. 36; *Martin* v. *Robinson,* 67 Tex. 368; *Thomas* v. *People,* 116 N. C. 12, 118 N. C. 33.

MORGAN, J. In December, 1899, one Louis Houg, thirty years of age, disappeared from Grand Forks county under circumstances which afforded reasonable grounds for the belief that he was dead, or had been secreted or otherwise unlawfully made away with. Upon his disappearance, search was made for him by the public authorities, and a reward offered by the county commissioners of said county for the production of his body and the apprehension of his murderers. All his relatives were notified of the facts relating to his disappearance. Some of the relatives resided in Minnesota, and others in Norway. Upon their request, a most careful and thorough search was again made for his body. One Swenson, a brother-in-law of Houg, consulted the states attorney, and upon his

advice an application was made for the appointment of a special administrator, and for this purpose Swenson was given a power of attorney from all the relatives of said Houg to act as their representative. When Houg disappeared he left in the house, on the farm on which he worked as a foreman, personal property consisting of clothing, a trunk, carpenters tools, and one promissory note for $500, and some other personal property. There were no creditors. All of his personal property was worth about $540. The appellant, William J. Clapp, was duly appointed special administrator on April 30, 1901, under subdivision 2 of section 6325, Rev. Codes 1899, and duly qualified by giving a bond for the faithful discharge of his duties. He inventoried the property, and took the same into his possession. Said Houg was not dead, however, and informed his relatives of his whereabouts in January, 1902. He had secretly left the place on which he worked, and had gone to the state of Washington, where he worked without communicating to any of his former friends or his relatives his whereabouts, although able to do so; he being of good health during all this time, and capable of writing to them if he so desired. The expenses of the special administrator, attorneys' fees, court fees, searching for the body, and other disbursements, amounted to $245.84. The probate court disallowed the bill for expenses and disbursements, and the administrator appealed to the district court. The trial court found that the order of the county court appointing a special administrator of Houg's estate was null and void, for the reason that said Houg was not dead, but a living person, and denied the administrator's application for costs and necessary disbursements and expenses incurred while acting as such special administrator. The administrator appeals from the judgment entered on such finding.

It is conceded by the respondent that the administrator and all persons concerned in the appointment of an administrator acted in good faith. It is also conceded by the respondent that the disbursements, as presented for allowance, are reasonable in amount, in view of the services rendered. It is conceded by the appellant that the order appointing the special administrator was properly set aside, but he contends that the necessary expenses of such administration should be allowed and paid before he can be compelled to turn over the property. The grounds of his contention are that the statute under which the appointment was made does not contemplate a general administration of the estate, but simply taking pos-

session of the estate of the absentee until his return, or until satisfactory proof of his death is received, and a general administrator appointed. The statute under which the appointment was made reads as follows:

"Section 6325. A special administrator shall be appointed when necessary or proper for the protection of the property or the rights of creditors or other persons interested in the estate, in either of the following cases: * * * (2) In a special proceeding in which probate or general administration is denied because the death of the person whose estate is in question is not satisfactorily proved; but he is shown to have disappeared under circumstances which afford reasonable grounds to believe either that he is dead or has been secreted, confined or otherwise unlawfully made away with."

"Section 6328. A special administrator has the same authority as a general administrator to take into his possession personal property, to secure and preserve it, to collect debts due the estate, and to take charge of the real estate and preserve it from waste or other injury and receive the rents, profits and income thereof, and for either of those purposes he may maintain any action or special proceeding. He must also make an inventory and render an account and may sell perishable property or do any other act which he may be specially required to do by direction of the court, but cannot act generally in matters pertaining to the settlement of the estate."

"Section 6331. When letters testamentary or of general administration on the estate are granted, the powers of a special administrator cease and he must forthwith deliver to the executor or administrator all the property and effects of the decedent remaining in his hands."

It will be observed that the appointment of a special administrator is to continue, under the terms of the statute, until a general administrator or an executor is appointed. The statute makes no provision for the disposition of the property by the special administrator in case of the return of the person believed to be dead. Nor is there any provision for allowance of his costs or for his compensation in the event of the person returning and demanding his property. The appellant claims that he should be allowed his costs in the proceeding, on the ground that the statute contemplates taking care of an absentee's property, and does not provide for its final distribution, and that it is, in that view, a valid law.

Respondent contends that the entire proceeding is based upon an assumption of death, and is one authorizing taking possession of property under the belief that the absentee owner is dead, and holding the same until satisfactory proof of his death is made, and general administration initiated, and that the proceedings in this case are void because taken upon the estate of a living person. Appellant concedes that the estate of a living person cannot be administered and distributed.

We shall not determine in this case whether this statute is applicable to the estate of dead or of living persons, or both, nor whether the statute is unconstitutional, as conferring powers upon the probate court, in respect to preserving the property of absentees, not vested in it by section 111 of the Constitution. Conceding, for the purposes of this case only, that such power may be conferred upon the county court in respect to the property of living absentees, we reach the conclusion that the law, so far as it affects the property of living persons, contravenes the provision of the fourteenth amendment of the Federal Constitution, that persons shall not be deprived of their property without due process of law. The proceedings under which special administrators are appointed in cases like the one at bar follow a refusal to appoint a general administrator on account of the failure of satisfactory proof of the death of the owner of the property to be taken into possession. No additional notice is given after the refusal to appoint a general administrator. The notice previously given as provided by section 6317, Rev. Codes 1899, is a notice to all persons interested in the estate, and rests on the assumption that the owner is dead. This is in no sense a notice to the owner of the estate, but is a notice to those interested therein adversely to him. *Scott v. McNeal,* 154 U. S. 34, 14 Sup. Ct. 1108, 38 L. Ed. 896; *Carr v. Brown* (R. I.) 38 Atl. 9, 38 L. R. A. 294, 78 Am. St. Rep. 855. He is not a party to the notice, nor to the proceedings. No hearing is afforded him on any question. The fact that he "has disappeared under circumstances which afford reasonable grounds to believe either that he is dead or has been secreted, confined or otherwise unlawfully made away with," is adjudicated without any finding of any kind of an attempt to notify him. The possession of the property is transferred to another. The tangible form of the property is changed by suits and collections. What may be deemed perishable property is sold. Costs and expenses are in-

curred. He is now called upon to pay these expenses, or his property will necessarily be sold to pay them. This is claimed to be done for his benefit, by preserving his property. If this law in fact contemplates the taking possession of the property of a living person, he should have an opportunity to be heard, upon some kind of notice, before the steps are taken; and taking them, without some prescribed notice to him to be given in some way indicated, is depriving him of his property without due process of law. In *Thomas* v. *People,* 107 Ill. 517, 47 Am. Rep. 458, it was said: "The general rule unquestionably is that no one is bound by an adjudication of which he had no notice, or to which he was not a party. Testing the present case by this rule, appellee is clearly not bound." In *Scott* v. *McNeal,* 154 U. S. 34, 14 Sup. Ct. 1108, 38 L. Ed. 896, the court said: "As the jurisdiction to issue letters of administration upon his estate rests upon the fact of his death, so the notice given before issuing such letters assumes that fact, and is addressed, not to him, but to those who after his death may be interested in his estate, as next of kin, legatees, creditors, or otherwise. Notice to them cannot be notice to him, because all their interests are adverse to his. The whole thing, so far as he is concerned, is *res inter alios acta.*" In *Hollingsworth* v. *Barbour,* 4 Pet. 475, 7. L. Ed. 922, the court said: "It is an acknowledged general principle that judgments and decrees are binding only upon parties and privies. The reason of the rule is founded on the immutable principle of natural justice that no man's right should be prejudiced by the judgment or decree of a court, without an opportunity of defending the right. This opportunity is afforded (or supposed, in law, to be afforded) by a citation or notice to appear, actually served, or constructively, by pursuing such means as the law may in special cases regard as equivalent to personal service." In *Walden's Lessee* v. *Craig's Heirs,* 14 Pet. 154, 10 L. Ed. 393, the court said: "It is admitted that the service of process or notice is necessary to enable a court to exercise jurisdiction in a case, and, if jurisdiction be taken where there has been no service of process or notice, the proceeding is a nullity. It is not only voidable, but it is absolutely void." See, also, *Boswell's Lessees* v. *Otis,* 9 How. 336, 13 L. Ed. 164; *Nations* v. *Johnson,* 24 How. 203, 16 L. Ed. 628.

Appellant's contention on the question of notice is that this is a proceeding *in rem,* and taking possession of the property is

notice to the owner. The proceedings were taken and the administrator appointed before possession was taken of the property, so that the possession of the property was taken under an order void, as to him, for want of notice. It is the petition that gives the county court jurisdiction to act at all, and the filing of the petition is not followed by giving the owner notice and an opportunity to be heard. He is not bound at all unless he can be bound by void proceedings. We discover no difference in this case from other proceedings *in rem* in state courts. No contention will be made that in attachment and foreclosure of real estate mortgages by advertisement, and like proceedings, notice would be given to the owner by taking the possession of the property. Even in proceedings strictly *in rem,* in admiralty courts, notice is generally essential, unless the proceeding is brought against the property, as defendant. In such cases, taking possession is deemed notice to the owner under the federal practice. As was said in *Hollingsworth* v. *Barbour, supra*: "The course of proceedings in admiralty causes, and some other cases where the proceeding is strictly *in rem,* may be supposed to be exceptions to this rule. They are not properly exceptions. The law regards the seizure of the thing as constructive notice to the whole world, and all persons concerned in interest are considered as affected by this constructive notice. But if these cases do form an exception, the exception is confined to cases of the class already noticed, where the proceeding is strictly and properly *in rem,* and in which the thing condemned is first seized, and taken into the custody of the court." See, also, *Lavin* v. *Bank* (C. C.) 18 Blatchf. 224, 1 Fed. 641. Under the cases cited, the taking of the property in this case would not be constructive notice to the owner. It was taken under an order of the county court, made without any notice or pretended notice. It was not taken by virtue of valid process. In *Thomas* v. *People,* 107 Ill. 517, 47 Am. Rep. 458, the court said: "But it is said the grant of letters upon an estate is in the nature of a proceeding *in rem,* and therefore the case in hand does not come within the rule mentioned—that, the proceeding being against the estate itself, those having an interest in it must look out for themselves. Conceding this to be so, what follows? Are we to conclude, because the law confers power upon the probate court to grant administration on a dead man's estate upon a mere *ex parte* petition, that it therefore follows the court may lawfully make such grant upon a **live**

man's estate, and that even without giving him an opportunity to be heard?" The absence of notice renders the proceedings void, and the statute is of no validity, as against the property of a living person, because it does not provide for notice to him. In no case, under state procedure, is the mere taking of possession of property equivalent to notice of action to be taken in reference to such property. We do not refer, in what has been said, to destruction or regulation of property under what is denominated the police power of the state.

It is lastly claimed that the proceedings can be sustained, although based on no notice, and the statute upheld as constitutional, under the police power of the state. No case is cited, and we find none, bringing this case within the regulations of that power. Such power extends to protection of life, health, general welfare, and the property of citizens from injurious results from the actions of others, or in the use of their property, but does not generally go to the extent of depriving them of such property, or its possession, without notice and due process of law. Generally, and except in cases of danger to health or property rights, the exercise of such power is subject to the constitutional guaranty of the fourteenth amendment. It is only in such and other similar cases that property can be taken without notice. "Due process of law" has been defined as follows: "By the 'law of the land' is most clearly intended the general law—a law which hears before it condemns, which proceeds upon inquiry, and renders judgment only after trial. The meaning is that every citizen shall hold his life, liberty, property, and immunities under the protection of the general rules which govern society." *Dartmouth College* v. *Woodward,* 4 Wheat. 579, 4 L. Ed. 629; Cooley on Const. Lim. (5th Ed.) 432; *Burdett* v. *Allen* (W. Va.) 13 S. E. 1012, 14 L. R. A. 337; *City of Ft. Smith* v. *Dodson* (Ark.) 11 S. W. 687, 4 L. R. A. 252, 14 Am. St. Rep. 62. In *Scott* v. *McNeal,* 154 U. S. 34, 14 Sup. Ct. 1108, 38 L. Ed. 896, the court said: "The appointment by the probate court of an administrator of the estate of a living person, without notice to him, being without jurisdiction and wholly void as against him, all acts of the administrator, whether approved by that court or not, are equally void. The receipt of money by the administrator is no discharge of a debt, and a conveyance of property by the administrator passes no title. * * * And he is not bound either by the order of appointing the administrator, or by a judgment in any

suit brought by the administrator against a third person, because he was not a party to, and had no notice of, either." The effect of holding that the special administrator lawfully took possession of the property in this case would be that a person, by absenting himself as Houg did, subjects his property to be taken and dissipated in paying the expenses of court proceedings. We do not think that such a construction was intended, nor that possession of the property was intended to be taken under such circumstances as are here presented. The property consisted of inanimate personal property. Leaving it, as was done, in no way affected the public, or the public health or welfare. The injury following its abandonment was to Houg alone. If the property was of such character that its presence was injurious to others, or of such character that it should be cared for in order to preserve life or prevent suffering, the general statutes afford ample authority for taking possession of it for such purpose. Section 7560, Rev. Codes 1899. But the taking of possession of it under this law, in the interests of the absentee, without, at least, notice to him, cannot be done without his consent, under the circumstances of this case; and, as the law provides for no notice, it must be held invalid to that extent, at least.

The language of the court in *Moore* v. *Smith,* 11 Rich. 569, 73 Am. Dec. 122, may be quoted as applicable to this case to some extent: "Under a comparison of the several merits of these parties, blame and *laches* have been imputed to the plaintiff for his long continued neglect of his property and friends, by which others were misled. Of the reasons of the plaintiff's conduct, we are not informed. It is enough that he was under no legal obligation to stay where his property was, or to give information concerning himself when he was away. He encountered the risk of the statute of limitations, which, if his absence had been a little longer, would have forever barred him."

For a general discussion upon the validity of statutes similar to the one under consideration, see Woerner's Am. Law of Adminis., vol. 1, section 212.

The judgment is affirmed.

YOUNG, C. J., concurs. COCHRANE, J., having been of counsel in the court below, took no part in the decision.